J. Gary Gwilliam, Esq. (State Bar No. 33430)
Randall E. Strauss, Esq. (State Bar No. 168363)
Jayme L. Walker, Esq. (State Bar No. 273159)
GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
1999 Harrison Street, Suite 1600
Oakland, CA 94612-3528
Telephone: (510) 832-5411
Facsimile: (510) 832-1918
Email: ggwilliam@giccb.com; rstrauss@giccb.com; jwalker@giccb.com

Attorneys for Plaintiff
FRANK CARSON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF FRANK CARSON AND GEORGIA DEFILIPPO, as an individual and as successor in interest to FRANK CARSON, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF STANISLAUS, CITY OF MODESTO, BIRGIT FLADAGER, MARLISSA FERREIRA, DAVID HARRIS; KIRK BUNCH, STEVE JACOBSON, JON EVERS, CORY BROWN, and DOES 1-25, inclusive, <br><br> Defendants. | Case No. 1:20-CV-00747-TLN-BAM <br><br> **FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES** <br> 1. **Violation of Civil Rights/Unlawful Search and Seizure (42 U.S.C. § 1983)** <br> 2. **Violation of Civil Rights /Malicious Prosecution (42 U.S.C. § 1983)** <br> 3. **Violation of Civil Rights /Retaliatory Prosecution (42 U.S.C. § 1983)** <br> 4. **Violation of Civil Rights /Fourteenth Amendment (42 U.S.C. § 1983)** <br> 5. **Violation of Civil Rights/Monell Liability, (42 U.S.C. § 1983)** <br> 6. **Violation of California Civil Code § 52.1** <br> 7. **False Imprisonment/False Arrest** <br> 8. **Wrongful Death** <br><br> **DEMAND FOR JURY TRIAL** |

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
P.O. Box 2079, Oakland, CA 94604-2079

## I. <u>INTRODUCTION</u>

1.      Plaintiff Frank Carson ("Carson") was a prominent Stanislaus County criminal defense attorney.  Carson was falsely and maliciously arrested and prosecuted for his alleged involvement in the murder of Korey Kaufman, a known thief and drug addict.   The Defendant law enforcement officials for Stanislaus County – stung by a series of high-profile defeats by Carson – falsely and maliciously concocted a fanciful tale, wherein Carson, concerned about the theft of antiques from his property, resorted to murder for hire.

2.      On August 14, 2015, Carson was arrested and charged with the murder of Korey Kaufman, on the theory that Kaufman was killed when he allegedly trespassed onto Carson's property to steal some metal pipes.  There was no evidence to support this preposterous theory.  There was no evidence that Korey Kaufmann was ever on Frank Carson's property, or that Kaufmann ever stole anything from Carson, or that Carson had any intent or motive to kill Kaufmann.  There was no circumstantial evidence connecting Carson to the murder of Kaufmann, there was no blood, hair, clothing fibers, fingerprints, spit, sweat, or any such thing found on Mr. Carson's property where the Defendants claimed the murder occurred.  There was not probable cause to believe Carson had committed any crime and Defendants knew it.  So they tried to create probable cause with fabricated testimony from career criminals who were given deals or leniency in their own criminal charges in exchange for statements against Carson.

3.      The Defendants did not stop with framing Frank Carson for murder, they also went after his family.  Carson's wife, Georgia Defilippo, and his stepdaughter, Christina Defilippo, were arrested and charged with murder and accessory to murder respectively.  They were both discharged after the prosecution failed to produce any evidence against them in an 18-month preliminary hearing and the judge found there was not probable cause to charge them with any crimes.

4.      During the preliminary hearing, one of the longest in California history, a judge ordered Carson released of his own recognizance, an act unheard of for someone charged with murder, because Defendant District Attorney Marlissa Ferreira repeatedly refused to turn over evidence of Carson's innocence.  The only reason Carson was held for trial after the preliminary

hearing was due to false and fabricated evidence by the Defendants.  However, he remained out of custody due to Ferreira's egregious prosecutorial misconduct.

5.      On June 28, 2019, after a jury trial that lasted more than a year, the jury acquitted Carson of all charges after less than two days of deliberations.

6.      Unfortunately, due to the circumstances of his confinement, Carson suffered deleterious health problems and died on August 12, 2020 as a direct result of the conditions of his imprisonment.

## II.      JURISDICTION AND VENUE

7.      Pursuant to 28 U.S.C. section 1331, the Court has original jurisdiction over this action because it arises, *inter alia*, under the Constitution and laws of the United States. The court has supplemental jurisdiction over state law claims.

8.      The Court has personal jurisdiction over the defendants because, *inter alia*, they transact business in and engaged in wrongdoing in the District.

9.      Pursuant to 28 U.S.C. section 1391(b)(1)-(2), venue is proper because the defendants reside in this District and a substantial part of the events or omissions giving rise to the action occurred in the District.

10.     All related cases have been consolidated for discovery and case management in the Sacramento Division of the Eastern District because the first filed case is pending there: *Baljit Athwal, et al. v. County of Stanislaus et al.*, Case No. 1:15-cv-00311-TLN-BAM.  All of the facts at issue in the *Athwal* case arise out of the same facts and circumstances alleged here.

## III.     CONDITIONS PRECEDENT

11.     For the state law claims against public entities and employees, Plaintiff timely filed government claims against the County of Stanislaus, City of Modesto, and their respective employees, on December 20, 2019.  The County of Stanislaus rejected the claims on February 20, 2020, and the City of Modesto rejected the claims on January 31, 2020.

12.     Plaintiffs sent amended claims to the County of Stanislaus and City of Modesto on October 12, 2020.  Plaintiffs' claim against Modesto was rejected on November 4, 2020.

///

## IV.    **PARTIES**

13.    Plaintiff Estate of Frank Carson was formed following the death of Frank Carson. The Estate stands in the shoes of Frank Carson and is the successor in interest for Frank Carson. The estate seeks survival damages under state and federal law.

14.    Plaintiff Georgia Defilippo is an individual residing in Stanislaus County and is the widow of Frank Carson, his personal representative and successor in interest.  Ms. Defilippo sues in her individual capacity and seeks survival and wrongful death damages under federal and state law.

15.    Defendant County of Stanislaus ("Stanislaus County") is a county, incorporated, duly organized, and existing under the laws of the State of California.  Stanislaus County operates under its authority the Stanislaus County District Attorney and Sheriff's Department. Stanislaus County is vicariously liable for defendants Birgit Fladager, David Harris, Marlissa Ferreira, Kirk Bunch, Steve Jacobson, and Cory Brown's wrongful searches, arrest and detention of Plaintiffs, as well as violations of their constitutional rights under California Civil Code section 52.1.

16.    Based upon the principles set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Stanislaus County is liable for the deprivation of Plaintiffs' rights protected by the United States Constitution, as set forth herein.  Stanislaus County bears responsibility because its policies, practices, and/or customs caused Plaintiffs' injuries.  In particular, Stanislaus County and its officials, including Birgit Fladager and David Harris maintained or permitted one or more of the following official policies, customs, or practices:

    a.    Failure to provide adequate training and supervision of Stanislaus County District Attorney attorneys and investigators, and Sheriff's Department deputies with respect to the constitutional limits on search, seizure, arrest, and detention;

    b.    Failure to adequately discipline or retrain employees involved in misconduct;

    c.    Selection, retention, and assignation of employees with demonstrable propensities for violation of constitutional rights;

    d.    Condonation and encouragement of employees in the belief that they can violate

the rights of persons such as Plaintiffs with impunity, and that such misconduct will not adversely affect their opportunities for promotion and other employment benefits; and

e.   Ratification at the highest levels of authority of the specific unconstitutional acts alleged herein.

17.   Defendant City of Modesto is a municipal entity with the capacity to sue and be sued.  It is a Charter City under the laws of the State of California.  The city operates under its authority the Modesto Police Department.  The City of Modesto is vicariously liable for defendant Jon Evers' unconstitutional conduct, including but not limited to involvement in the wrongful search, arrest and detention of Plaintiff, as well as violations of his constitutional rights under California Civil Code section 52.1.

18.   Defendants Birgit Fladager, David Harris were final policymakers for the Stanislaus County District Attorney's Office and the County of Stanislaus and ratified the unconstitutional actions of their subordinates with knowledge of their unconstitutional conduct. They committed the acts complained of herein while acting within the course and scope of their official duties.  They are sued in both their individual and official capacities.

19.   Marlissa Ferreira, Kirk Bunch, and Steve Jacobson, are and were at all relevant times employed by the County of Stanislaus District Attorney and committed the acts complained of herein while acting within the course and scope of their duties.  They are sued in their individual capacities.

20.   Defendant Cory Brown is and was at all relevant times employed by the County of Stanislaus Sheriff's Department and committed the acts complained of herein while acting within the course and scope of his duties.  He is sued in his individual capacity.

21.   Defendant Jon Evers is and was at all relevant times employed by the City of Modesto Police Department and committed the acts complained of herein while acting within the course and scope of his duties.  He is sued in his individual capacity.

22.   Plaintiffs are informed and believe, and thereon allege that each defendant is, and at all times mentioned herein was, the agent, employee, representative, successor, and/or

1  assignee of each other defendant.  Each defendant, in doing the acts or in omitting to act, as

2  alleged herein, was acting within the scope of his or her actual and apparent authority, or the

3  alleged acts and omissions of each defendant as agent were subsequently ratified and adopted by

4  each other defendant as principal.  Plaintiffs are informed and believe that each of the individual

5  defendants was in some way responsible for the constitutional violations and torts herein alleged.

6      23.     Plaintiffs are ignorant of the true names and capacities of the defendants sued

7  herein as Does 1-25, inclusive, and therefore sue these defendants by such fictitious names and

8  capacities.  Plaintiffs are informed and believe, and on that basis allege, that each defendant sued

9  under such fictitious names is in some manner responsible for the occurrences herein alleged,

10 and that their injuries as herein alleged were proximately caused by the conduct of such

11 defendants.

12 **V.      FACTUAL SUMMARY**

13     24.     Frank Carson was a prominent criminal defense attorney who had actively

14 worked to expose corruption within the ranks of Stanislaus County law enforcement.  Mr. Carson

15 was an extremely successful attorney, especially in cross-examining dishonest police officers and

16 investigators, and had several high-profile verdicts in his favor against the Stanislaus County

17 DA's Office.  As a result of Carson's success, he was reviled by many in law enforcement,

18 especially in the Stanislaus County District Attorney's office.  All of the Defendants were

19 motivated to maliciously prosecute and falsely arrest Frank Carson because he had publicly

20 embarrassed law enforcement and prosecutors in Stanislaus County.

21     25.     On March 29, 2012, Korey Kaufman's stepfather, Kevin Pickett, recorded on his

22 daily planner that Korey had not returned home.  On April 2, 2012, Pickett reported Kaufman

23 missing to the Turlock Police Department and told the police department that Kaufman was last

24 known to be at Michael Cooley's residence.  Cooley was a career criminal, drug dealer and an

25 informant and he lived on the property behind a property owned by Frank Carson.  Carson had

26 long suspected that Cooley and his family were involved in multiple thefts from his property.

27 Detective Shaw of the Turlock Police Department went to talk to Cooley, and Cooley said that

28 he last saw Kaufman going over to Carson's property to steal some scrap metal.  Detective Shaw

1    immediately called Defendant Kirk Bunch, an investigator with the Stanislaus County DA's

2    Office, to tell him there was a missing person and he was last seen going to Carson's property.

3    The DA's Office suddenly became very interested in this missing person case and a conspiracy

4    to destroy Carson was born.

5         26.    Defendants' theory arose because Frank Carson and his wife, Georgia DeFilippo,

6    have a hobby of collecting and selling antiques, including antique books and advertising signs.

7    They owned two properties in Turlock, California, where they stored many of their antiques.

8    Carson's stepdaughter, Christina DeFilippo, was living in one of the properties in Turlock where

9    antiques were stored.  At an antique fair, Frank and Georgia saw their belongings being sold by

10   another antique dealer and learned they were being robbed. Upon investigation of their property,

11   they discovered a hole in the fence and a beaten path from the open container to an adjacent

12   home rented by Michael Cooley.  They asked Christina to keep an eye on the field, and in or

13   about February 2011, Christina noticed that a lock on an outdoor container had been broken and

14   the door was open.  Christina notified her mother and stepfather of this. The Carson family

15   contacted law enforcement to report the thefts and the obvious evidence of the Cooley family's

16   involvement, but they were told that nothing could be done unless Cooley was seen with their

17   property.

18        27.    Thereafter, Frank Carson, and his wife Georgia DeFilippo, and stepdaughter,

19   Christina DeFilippo took steps to prevent additional thefts of their property.  They left lights on

20   in the house and installed a motion detector, with Christina notifying Carson and Georgia if the

21   motion detector was activated.  Carson also repaired sheds and locks to bolster security. Carson

22   created a stolen book alert, to give to dealers in the area in the hopes that someone would call the

23   Sheriff's Department and report if his stolen books were presented for purchase.  The stolen

24   book alert contained a list of the people who lived in the Cooley household, the books and other

25   antiques that were stolen, a description of the Cooley's vehicle, Carson's phone numbers, and the

26   Sheriff's Department's phone number, along with the report number.  Contrary to lies told to the

27   court and the public by Stanislaus County Deputy District Attorney Defendant Marlissa Fereirra,

28   Korey Kauffman was not included on this list as a suspected thief.  Indeed, there was never any

evidence that Carson, Georgia, or Christina even knew Mr. Kauffman.  Rather, Korey Kauffman was an associate of the Cooley family and made his living by stealing things and recycling them for money.  He was a known thief and drug addict and had many enemies, including drug dealers from whom he had stolen.  Michael Cooley should have been a prime suspect in Kauffman's disappearance since he was the last person to see Kauffman alive, and after Kauffman disappeared, he buried Kauffman's bicycle in his backyard.  In addition, to pointing the finger at Frank Carson, Cooley also accused several other people of murdering Korey Kauffman, including two local drug dealers, David McMillan and Jason Armstrong.  Cooley also confessed to witnesses that he himself was involved in the murder.  Yet Defendants ignored all this and pursued a malicious investigation into Frank Carson.

28.     Shortly after Kauffman was reported missing in April 2012, District Attorney Defendant Birgit Fladager and Chief Deputy District Attorney Defendant David Harris convened a task force for the purpose of investigating the Kaufman disappearance, but specifically for investigating Frank Carson.  Defendant Bunch and Defendant Steve Jacobson, investigators with the DA's Office, primarily led the investigation, but the DA's office used several other Stanislaus County law enforcement agencies and federal funds designated for fighting gang violence in order to frame Frank Carson for murder.  It was highly unusual for the District Attorney's office to lead an investigation into a missing person, yet at the mere mention of Frank Carson's name the District Attorney's office became the lead investigating agency on the case.

29.     Defendant Kirk Bunch was the lead investigator of the malicious investigation. Carson had previously exposed Bunch's corruption and dishonesty when Bunch was involved as an investigator in a political vendetta against the former mayor of Modesto, Carmen Sabatino who was charged with crimes by the DA's Office in the early 2000s.  Carson represented Sabatino and wrote declarations in state and federal court exposing Defendant Bunch for dishonesty and accusing him of intimidating witnesses in the case.  Defendant Bunch had a long history of corruption and Defendants Fladager, Harris and Ferreira knew or should have known that he was unfit to be in law enforcement.  There was Brady material on Bunch that a physician in a worker's comp case said that Bunch had "manipulated and deceived him" and he did not

1    believe Bunch should work as an investigator.

2        30.    Defendant Steve Jacobson was also involved in the malicious investigation.

3    Jacobson has a long history of animosity against Frank Carson and has repeatedly been exposed

4    as a liar by Carson in court.  Prior to Carson's arrest, Defendant Jacobson assaulted Carson at the

5    courthouse and Carson sued him.  The civil case was pending during the investigation.

6        31.    Defendant Fladager supervised Defendants David Harris and Defendant Marlissa

7    Ferreira as well as Bunch and Jacobson.  From the inception of the investigation in 2012,

8    Defendant Harris also supervised Defendants Bunch and Jacobson on the Carson investigation.

9    In or around 2015, when Harris was accused of jury tampering and contempt of court in a case

10   he had with Carson as defense counsel, Defendant Marlissa Ferreira took over as the supervisor

11   of the investigation and of Bunch and Jacobson.

12       32.    Korey Kauffman's body was found in a remote area of the Stanislaus National

13   Forest, more than a year after he disappeared, on August 19, 2013.  His body had been ravaged

14   by animals and what was left of it was found scattered on the forest floor.  An autopsy was

15   unable to determine any cause of death.

16       33.    Prior to the time the location where the body was found was made public,

17   Defendants Kirk Bunch and Derek Perry of the City of Ceres Police Department set up game

18   cameras to watch the area.  The cameras revealed that two marijuana growers and dealers, David

19   McMillan and Jason Armstrong, were in the area where the body was found, before the public

20   knew where the body was found.   Michael Cooley had accused these same two dealers of

21   murdering Kauffman and Defendants knew that they had made threats against Kauffman prior to

22   his disappearance.  The Defendants interviewed McMillan and Armstrong, and McMillan asked

23   the Defendants why they were even investigating this case and said that Kauffman was a "piece

24   of shit thief."  The Defendants knew that Armstrong and McMillan were heard talking about

25   where Korey Kaufman was buried before that information was public.  None of this was

26   included in the arrest warrant for Frank Carson.  Defendant Bunch destroyed the evidence on the

27   game cameras showing McMillan was in the area where the body was found.  Defendants

28   entirely ignored McMillan and Armstrong as suspects and continued to go after Frank Carson.

34.     In November 2013, Frank Carson was fed up with corruption in the DA's Office and announced that he was going to run against Defendant Birgit Fladager.  Following this challenge to her election, DA Fladager became even more motivated to frame Carson for murder.

35.     In February 2014, Robert Woody, an employee of the Pop N Cork liquor store owned by the brothers Baljit Athwal and Daljit Atwal, was recorded on a wire bragging to a young woman that he alone had killed Korey Kauffman, cut him up and fed him to pigs.  Woody and the young woman, Miranda Dykes, were smoking meth together when Woody in a delusional state made these crazy comments to try to impress Ms. Dykes.  Defendants knew that what Woody was claiming did not match the physical evidence of the crime.  Ms. Dykes cooperated with Defendants on a promise of getting her kids back from CPS, but she later adamantly told Defendants that she did not think Woody had anything to do with the murder.

36.     Woody was arrested March 1, 2014.  During his 7-hour interrogation with Defendant Bunch, Jacobson, and Defendant Jon Evers of the Modesto Police Department, Woody repeatedly denied any involvement in the Kauffman murder.  Mysteriously, the interrogation recording has a long gap in which Woody is said to be going to the bathroom, Defendants Bunch and Jacobson accompanied him and coerced him to tell them what they wanted to hear about Frank Carson.  When Woody returned from the bathroom, he told Defendants Bunch, Evers, and Jacobson that his employers, owners of the Pop N Cork liquor store, Baljit Athwal and Daljit Atwal had murdered Kauffman and that they did it because they were asked by Carson to watch over his property for thieves.   Defendants Jacobson, Bunch and Evers coerced Woody to fabricate this evidence knowing full well it was false.  During the bathroom break, Defendant Bunch and Jacobson fed Woody information that would fit their theory and coerced him to adopt this information in exchange for leniency in any charges against him.

37.     On August 13, 2015, with no more evidence against Carson than Robert Woody's testimony which was unreliable and completely unbelievable, had repeatedly changed over time and even contradicted the physical evidence in the case, Defendant Corey Brown submitted a Ramey Warrant for Carson's arrest.  Defendant Brown was the affiant of the Ramey warrant to

1   arrest Carson, but Plaintiff is informed and believe and thereon alleges that Kirk Bunch reviewed

2   and approved the contents of the arrest warrant and may have largely authored it.  Defendant

3   David Harris and Defendant Marlissa Ferreira also reviewed and approved the arrest warrant,

4   knew it contained fabrications and omissions but ordered Defendant Brown to submit the 325

5   page warrant to a judge, knowing that no judge would have time to carefully review the

6   unorganized, rambling document.  No reasonable law enforcement officer would have believed

7   that the arrest warrant established probable cause for the arrest of Carson.

8       38.   Pursuant to the Ramey warrant, on August 14, 2015, Frank Carson was falsely

9   arrested and maliciously accused of being involved in an elaborate murder for hire scheme that

10  resulted in the murder of Korey Kauffman.  Not satisfied to simply try to take down Frank

11  Carson, law enforcement maliciously went after his family as well.  Georgia DeFilippo, Carson's

12  wife, and Christina DeFilippo, Georgia's daughter and Carson's stepdaughter, were also arrested

13  for the murder.

14      39.   The owners of the Pop N Cork liquor store where Robert Woody worked, Baljit

15  Athwal and Daljit Atwal, were also arrested and accused of murdering Kauffman based on the

16  preposterous theory that they were monitoring Carson's property for thieves in exchange for

17  Carson's representation of Woody in a minor criminal case.  Three California Highway Patrol

18  Officers, Eduardo Quintanar, Scott McFarlane and Walter Wells, who frequented the Pop N

19  Cork and were friends of the Atwals were also arrested on conspiracy and accessory charges.

20      40.   The defendants made material misstatements, lies, misrepresentations and

21  omissions in search and arrest warrants that violated Carson's Fourth Amendment rights as

22  follows:

23      a.   The arrest warrant indicates that Kaufman disappeared on March 30, 2012.

24           This was not true, he disappeared on March 29, 2012.  Kaufman's family put

25           out fliers indicating that Kaufman disappeared March 29, 2012.  Defendants

26           knew this was not true but asserted this date because their junk cell phone

27           expert gave opinions implicating Carson, CHP Officer Wells and the Atwals

28           were in the vicinity of Carson's Turlock property on the night of March 30,

2012.  This expert's testimony was later excluded from the criminal trial after he admitted under oath that the cell towers showed that the Atwals and Wells were never on the Carson property the night of March 30, 2012 and were at the Pop N Cork just as they always said they were.

b.  The warrant alleges that Kauffman was going over the fence of Carson's property to steal metal pipes, but law enforcement knew there were never any pipes on Carson's property.

c.  The warrant omitted the extreme coercion and improper tactics, such as contamination, employed to fabricate Robert Woody's statements. Even though law enforcement fed Woody non-public facts of the murder, he never provided any on his own, they claimed that he knew non-public facts about the crime. No reasonable law enforcement officer would have believed that Woody's testimony established probable cause to arrest anyone, especially when it contradicted the physical evidence of the crime.

d.  The arrest warrant says Carson visited a witness named Ron Cooper in jail to solicit his "muscle" to help him with thefts on his property.  It was easily verifiable that Carson had never visited Cooper in jail, yet Defendants purposefully included this false information in the arrest warrant.

e.  The arrest warrant did not contain any information about the lack of credibility of the witnesses, including multiple contradictory statements by witnesses, especially Robert Woody's several different statements where he denied involvement altogether or said the Atwals hired a Mexican prison buddy to kill Kauffman (even though neither Atwal had ever been to prison).

f.  The warrant failed to inform the judge of grants of immunity or plea deals given to nearly every witness in exchange for their statements against Carson, including but not limited to, Robert Woody, Michael Cooley, his girlfriend Eula Keyes, her son, Keith Hobbs (who were given immunity or had their cases dropped for various drug crimes), Ron Cooper, Patrick Hampton (another career

1       criminal who gave a statement that Carson tried to solicit him to watch over his

2       property at the courthouse), and others.

3      g.    The fact that there were multiple other suspects that Cooley had accused of

4       being involved in the murder of Kauffman, including the drug dealers, including

5       McMillan and Armstrong, that were seen on game cameras near where the body

6       was found, and the fact that Cooley himself had even admitted to witnesses that

7       he was involved in Kauffman's murder was not disclosed in the arrest warrant.

8      h.    Defendants' bias against Carson, including Carson's civil lawsuit against

9       Jacobson for assault, a jury tampering hearing against Jacobson and Harris, and

10       the accusations that Carson had made against Bunch were never disclosed in

11       any warrants.

12      i.    The warrant had several false and misleading misrepresentations that placed

13       Carson in a negative light, including that he lied in a 911 call when the

14       recording showed he did not lie.

15      j.    The warrant deliberately omitted any information about the physical evidence

16       because Defendants knew that the physical evidence, including the fact that

17       there was no blood, hair, clothing fibers, fingerprints, spit, sweat, or any such

18       thing found on Mr. Carson's property where the Defendants claimed the murder

19       occurred or at the Pop N Cork where Kauffman was allegedly buried, showed

20       there was not probable cause to arrest Carson, or anyone else that was arrested,

21       for murder.

22     41.    There was never any evidence that a murder had occurred on Frank Carson's

23  Turlock property.  The only thing linking Frank Carson to the murder of Korey Kauffman was

24  the statement of the career criminal, Robert Woody, who initially said he alone had murdered

25  Kauffman.  Woody's statement morphed into the ridiculous allegation that Kauffman was shot

26  on Carson's Turlock property by one of the Atwals, who patrolled Carson's property in exchange

27  for Carson representing Woody in a minor criminal case.  This alleged gunshot was not heard by

28  anyone in a neighborhood full of people. There was no blood, hair, clothing fibers, fingerprints,

1   spit, sweat, or any such thing found on Carson's property.

2       42.    Woody also told Defendants that Kauffman's body was taken from Carson's

3   property and buried at the Pop N Cork liquor store, a mere 14 inches underground, until it was

4   dug up a month later and taken by Baljit Athwal to the mountains.  The burial at the Pop N Cork

5   allegedly occurred in a crowded neighborhood with no witnesses, and where numerous law

6   enforcement frequented, yet no one so much as smelled a decomposing body that was a mere 14

7   inches underground right behind the backroom where law enforcement regularly gathered to

8   drink after their shifts.  No reasonable law enforcement officer would have believed that

9   Woody's statement established probable cause to arrest Carson, or anyone else, especially when

10  the physical evidence did not support it.

11      43.    During the course of the investigation into the murder of Kauffman, Defendants

12  Harris, Ferreira, Bunch, Jacobson, Evers, and Brown were party to coercion and intimidation of

13  witnesses that they knew or should have known created false evidence against Frank Carson.

14      44.    Fladager, Harris, and Ferreira supervised and knowingly condoned the

15  intimidation and coercion of witnesses in order to create false evidence against Carson.

16  Defendants Harris, Ferreira, Bunch, Jacobson, Evers, and Brown used unduly coercive

17  interviewing techniques, such as prolonged interrogation, contamination (the feeding non-public

18  information to the witnesses and then having the witness adopt that information), and used

19  promises of leniency in the witnesses' own criminal charges in order to fabricate evidence

20  against Carson.  Almost every witness that in any way implicated Frank Carson was a career

21  criminal whose own criminal charges were dropped or significantly reduced in exchange for

22  testimony against Carson.

23      45.    Defendant Evers participated in fabrication of evidence from a witness, Scott

24  Rollins, by hiding evidence of Michael Cooley's motive to kill Korey Kaufman.  Rollins knew

25  that Cooley and Cooley's girlfriend's son, Keith Hobbs, were seen beating up Kauffman.  Rather

26  than investigate whether Cooley and Hobbs killed Kauffman, Defendant Evers solicited a false

27  statement from Rollins that he had seen the Atwals in a fight with Kauffman.  This shows the

28  lengths the Defendants went to cover up credible leads to try to frame Carson and the Atwals for

1   murder.

2       46.     Following the false and unlawful arrest, the Defendants conducted a press

3   conference where Carson was defamed and accused of being a murderer.  For the first time in

4   Stanislaus County history, the entire arrest warrant, including the personal identifying

5   information and social security numbers of the accused, was posted online.  Thereafter, two

6   credit cards were opened in Frank Carson's name.  This is clear evidence that Defendants were

7   malicious in their arrest and prosecution of Carson and his family.

8       47.     A preliminary hearing began on October 13, 2015, and continued for 18 months,

9   one of the longest in California history.  During the preliminary hearing, Defendant Jacobson

10  procured further false testimony from Robert Woody because there was no evidence that Frank

11  Carson and CHP Officer Walter Wells were on Carson's property the night of the alleged

12  murder.  Woody had repeatedly told investigators that Carson had never asked them to hurt

13  anyone stealing from his property.  Defendant Jacobson had Robert Woody's mother, Beverly

14  Woody, hold up a note to Robert Woody during a jail visit telling him they needed more

15  implicating Carson and Wells.  Following this, Woody changed his story (yet again) and said

16  Carson and Wells were on the property the night Kauffman was murdered.  Woody recanted this

17  statement several days later.

18      48.     At some time, law enforcement gave Woody a polygraph test and he was asked

19  whether he had anything to do with murder.  He said no, and he passed the test.

20      49.     All of the defendants were involved in a conspiracy to violate Carson's

21  constitutional rights, as well as a conspiracy to defame, falsely arrest, and maliciously prosecute

22  him.  Each of the defendants were involved in the malicious, retaliatory investigation and

23  prosecution and/or in furthering the goals of the conspiracy, which was to destroy the life and

24  career of Frank Carson.

25      50.     Defendant Birgit Fladager, David Harris and Marlissa Ferreira acted outside their

26  roles as prosecutors and acted as supervisors, investigators and administrators.  Defendants

27  Fladager, Harris and Ferreira gave legal advice to investigators and police officers including

28  advice that they had probable cause to search and arrest Carson, engaged in the planning,

1  drafting and execution of search and arrest warrants based on evidence they knew was false,

2  coerced and fabricated evidence in order to search and to arrest Carson, and otherwise fully

3  participated in and advised the officers and investigators throughout the investigation in which

4  probable cause never existed to arrest Frank Carson.  Defendants knew there was not probable

5  cause to suspect Carson of any crime, yet they falsely and maliciously arrested and prosecuted

6  him based on fabricated evidence.

7       51.     Defendant Ferreira committed the following acts while acting outside her role as a

8  prosecutor:

9       a.  Ferreira and Bunch went to visit a witness, TJ Singh, and told him not to sign a

10          conflict waiver in order to deprive Carson's stepdaughter, Christina DeFilippo,

11          of legal representation.

12      b.  Ferreira repeatedly asked when Carson's wife, Georgia, was going to run out of

13          money for her defense and repeatedly told defense attorneys for Georgia and

14          Christina that if they would give testimony implicating Carson in the crime, the

15          charges against them would be dropped.  Georgia and Christina refused to do

16          so, as it would have been a lie.

17      c.  Ferreira visited the owner of an antique mall and asked if Frank and Georgia

18          ever sold guns, to which she was told no.  Ferreira never did a report on this and

19          never disclosed it as Brady material.

20      d.  Ferreira acted as a primary investigator and participated in the interviews of

21          witnesses and the fabrication of their testimony, including witness Ron Cooper

22          who Carson allegedly solicited for his "muscle" to make an example of thieves

23          on his property.

24      52.     Defendant Harris oversaw the entire investigation including the fabricated arrest

25  warrant and had full knowledge of and condoned the unconstitutional acts of his subordinates,

26  Bunch, Jacobson, Evers, and Brown.  Defendant Fladager supervised both Ferreira and Harris

27  and was intimately involved in this case as part of the conspiracy to maliciously arrest and

28  prosecute Frank Carson.

53.     Defendant Fladager ratified and condoned unconstitutional policies and decision-making in the District Attorney's office including the coercion of criminal Defendants to give false statements against Carson in exchange for their cases being dropped or significantly reduced.  Defendant Fladager was intimately involved in the false and misleading arrest warrant to frame Frank Carson for murder.

**VI.     CONCLUSION**

54.     The theory pursued by law enforcement to frame Frank Carson for murder was so outlandish that no reasonable person would have believed it to be true.  The Defendants in this case ignored all the real suspects who actually had a motive to kill Korey Kauffman, including several career criminals like Michael Cooley and drug dealers Jason Armstrong and David McMillan, and pursued a preposterous conspiracy theory that a well-respected attorney engaged two local business owners to murder someone and then engaged 3 California Highway Patrol Officers to help cover it up.  It was alleged that the local business owners, the Atwal brothers, who had no criminal history, murdered Korey Kauffman for Carson in exchange for him to represent their employee in a stolen property case.  This simply makes no sense and how any prosecutor or police officer pursued this scheme with a straight face is bewildering.  The Carson family did not know any of the CHP officers that allegedly helped cover up the crime, didn't know Daljit Atwal even existed, and were only barely acquainted with Baljit Athwal.  This alleged conspiracy was based solely on the statement of a drug addicted felon, Robert Woody, and it all started because Woody was trying to impress a girl by saying that he alone had killed Kauffman.  Defendants then used their authority under state law to coerce Mr. Woody to incriminate Frank Carson.  Their theory that Carson committed murder for hire was nothing short of delusional and therein lies the proof of the malicious, unconscionable and fraudulent nature of what the Defendants did.

55.     On June 28, 2019, Frank Carson and the Atwal brothers were acquitted of all charges by a jury after less than two days of deliberations.

56.     Following the trial, Defendants from the Stanislaus County DA's Office further defamed Carson in the press by continuing to accuse him of being involved in a murder due to

1  the thefts of scrap metal on his property.

2  **VII.**   **DAMAGES**

3    57. The Estate of Frank Carson suffered enormous economic damages including lost

4  income to and reputational damage his law practice.  The Estate also has significant legal fees for

5  Mr. Carson's criminal defense. Mr. Carson served 17 months in jail.  His health deteriorated due

6  to the conditions of the jail.  The jail was closed for inhumane conditions just months after

7  Carson was released.  He suffers from high blood pressure, went into kidney failure and had to

8  be on dialysis.  On August 12, 2020, Mr. Carson passed away as a result of complications from

9  diabetes and high blood pressure due to these conditions being uncontrolled while he was in jail.

10    58. Georgia Defilippo was married to Frank Carson at the time of his death.  Ms.

11  Defilippo relied on Frank Carson for his love, companionship, comfort, society, affection, solace

12  and moral support.  Georgia Defilippo also suffers from significant economic losses as a result of

13  Frank Carson's death and the loss of his law practice as a result of his death.  As a direct result of

14  Mr. Carson's death, Ms. Defilippo suffered and continues to suffer damages, including but not

15  limited to loss of their shared income, financial losses related to the closing of the law firm,

16  funeral expenses, and general damages related to the loss of Frank Carson's love,

17  companionship, comfort, affection, society, solace and moral support.

18  
19         **FIRST CAUSE OF ACTION**
     **42 U.S.C. section 1983 for Fourth Amendment Violations**
      **Unlawful Search and Seizure/Judicial Deception**
20  **[Estate of Carson Against Fladager, Harris, Ferreira, Bunch, Brown, and DOES 1-25]**

21    59. Plaintiffs incorporates by reference and realleges each and every allegation set

22  forth above, as though fully set forth herein.

23    60. In doing the acts complained of herein, Defendants, and/or each of them, acted

24  under color of law to deprive Plaintiff of certain constitutionally protected rights, including, the

25  right to be free from unreasonable searches and seizures, as guaranteed by the Fourth

26  Amendment to the Constitution of the United States and the right to be free from arrest without

27  probable cause guaranteed by the Fourth Amendment to the Constitution of the United States.

28    61. Defendants Bunch and Brown presented search warrants that were so clearly

1  lacking in probable cause that any reasonable officer would have known that they did not have

2  probable cause to search or seize Plaintiffs.

3     62.   As set forth in detail above, Defendants Bunch and Brown intentionally or in

4  reckless disregard of the truth made one or more material misrepresentations or omissions in a

5  search warrant affidavit submitted to a judge.

6     63.   Defendants Fladager, Harris and Ferreira were acting as supervisors of Bunch and

7  Brown and either directed their subordinates to submit these deceptive warrants, and/or failed to

8  intervene to stop their subordinates from violating Plaintiffs' constitutional rights.  Defendants

9  Fladager, Harris and Ferreira's conduct was so closely related to the constitutional deprivations

10 as to be the moving force behind the violations of constitutional rights.

11    64.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Estate

12 of Carson has suffered damages, including, but not limited to, legal expenses and economic

13 losses.

14    65.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff

15 Defilippo has suffered damages, including but not limited to loss of financial support, funeral

16 expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection,

17 society, solace and moral support.

18    66.   In doing the things alleged herein, the Defendants' conduct was despicable.  The

19 Individual Defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful

20 and conscious disregard for Plaintiffs' rights, entitling them to an award of punitive damages.

21                    **SECOND CAUSE OF ACTION**
               **42 U.S.C. section 1983 for Fourth Amendment Violations**
22            **Malicious Prosecution in Violation of the Fourth Amendment**
          **[Estate of Carson Against Defendants Fladager, Harris, Ferreira, Bunch, Jacobson, Evers,**
23                          **Brown, and DOES 1-25]**

24    67.   Plaintiffs incorporate by reference and reallege each and every allegation set forth

25 above, as though fully set forth herein.

26    68.   In doing the acts complained of herein, Fladager, Harris, Ferreira, Bunch,

27 Jacobson, Evers, Brown and DOES 1-25, inclusive, and/or each of them, acted under color of

28 law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to,

the right to be free from arrest and prosecution without probable cause guaranteed by the Fourth

Amendment to the Constitution of the United States.

69.   Defendants were actively involved in causing the initiation of criminal

proceedings against Plaintiffs without probable cause and with malice and reckless indifference.

70.   The criminal proceedings were terminated in Plaintiff's favor.

71.   No reasonable person would have believed that there were grounds for Plaintiff to

be arrested or prosecuted and Defendants, by their conduct, intended to deprive Plaintiff of his

constitutional right to be free from unreasonable seizures under the Fourth Amendment.

72.   Defendants Fladager, Harris, and Ferreira are sued in their capacity as

administrators, supervisors and investigators, for their acts alleged above and not for any acts in

their roles as prosecutors in the presentation of the state's case against Carson.

73.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Estate

of Carson has suffered damages, including, but not limited to, legal expenses and economic

losses.

74.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff

Defilippo has suffered damages, including but not limited to loss of financial support, funeral

expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection,

society, solace and moral support.

75.   In doing the things alleged herein, Defendants' conduct was despicable.

Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious

disregard for Plaintiff's rights, entitling him to an award of punitive damages.

### THIRD CAUSE OF ACTION
**42 U.S.C. section 1983 for First and Fourth Amendment Violations**
**Retaliatory Prosecution in Violation of the First and Fourth Amendment**
**[Estate of Carson Against Defendants Fladager, Harris, Ferreira, Bunch, Jacobson, Evers, Brown and DOES 1-25]**

76.   Plaintiff incorporates by reference and realleges each and every allegation set

forth above, as though fully set forth herein.

77.   In doing the acts complained of herein, Fladager, Harris, Ferreira, Bunch,

Jacobson, Evers, Brown and Does 1-25, inclusive, and/or each of them, acted under color of law

1  to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to,

2  Plaintiff's First amendment rights to engage in constitutionally protected activities without fear

3  of being criminally charged without probable cause, the right to be free from unreasonable

4  searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United

5  States.  The right to be free from arrest without probable cause guaranteed by the Fourth

6  Amendment to the Constitution of the United States.

7      78.    Defendants caused the initiation of criminal proceedings against Plaintiff without

8  probable cause and with malice and reckless indifference and in retaliation for the

9  constitutionally protected activities of their family member Frank Carson as a lawyer and public

10  advocate against corruption of law enforcement.

11      79.    The criminal proceedings were terminated in Plaintiff's favor.

12      80.    Defendants Fladager, Harris, and Ferreira are sued in their capacity as

13  administrators, supervisors and investigators, for their acts alleged above, and not for any acts in

14  their roles as prosecutors in the presentation of the state's case against Carson.

15      81.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Estate

16  of Carson has suffered damages, including, but not limited to, legal expenses and economic

17  losses.

18      82.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff

19  Defilippo has suffered damages, including but not limited to loss of financial support, funeral

20  expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection,

21  society, solace and moral support.

22      83.    In doing the things alleged herein, Defendants' conduct was despicable.

23  Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious

24  disregard for Plaintiff's rights, entitling them to an award of punitive damages.

25

26  **FOURTH CAUSE OF ACTION**
    **42 U.S.C. section 1983 for Fourteenth Amendment Violations**
    **[Estate of Carson Against Defendants Fladager, Harris, Ferreira, Bunch, Jacobson, Evers,**
27  **Brown, and DOES 1-25]**

28      84.    Plaintiff incorporates by reference and realleges each and every allegation set

forth above, as though fully set forth herein.

85.     In doing the acts complained of herein, Bunch, Jacobson, Evers, Brown, and DOES 1-25, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to, Plaintiffs' First amendment rights to engage in constitutionally protected activities without fear of being criminally charged without probable cause, the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States.  The right to be free from arrest without probable cause guaranteed by the Fourth Amendment to the Constitution of the United States and the right to due process of law by being informed of all exculpatory evidence in the criminal case against Plaintiffs guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.

86.     The circumstances as set forth above clearly indicated to Defendants that further investigation was warranted and there was a lack of probable cause to arrest Plaintiffs.

87.     Defendants failed to disclose highly exculpatory evidence to prosecutors even though they knew or should have known or acted with reckless disregard for the fact that withholding such evidence would result in constitutional deprivations of the Plaintiff.

88.     Defendants Fladager, Harris and Ferreira were acting as supervisors and investigators when this exculpatory evidence was withheld.

89.     Plaintiff Carson spent 17 months in jail before being released based on prosecutorial misconduct and nearly 4 years charged with murder until he was acquitted by a jury.

90.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Estate of Carson has suffered damages, including, but not limited to, legal expenses and economic losses.

91.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Defilippo has suffered damages, including but not limited to loss of financial support, funeral expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection, society, solace and moral support.

92.     In doing the things alleged herein, Defendants' conduct was despicable. Defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard for Plaintiff's rights, entitling them to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS FOR UNCONSTITUTIONAL CUSTOM OR POLICY, 42 U.S.C. §§ 1983, 1988
### [Estate of Carson Against Defendant Stanislaus County, Fladager and Harris]

93.     Plaintiffs hereby realleges and incorporates each and every allegation set forth above as though fully set forth herein.

94.     Under the First and Fourth Amendment to the United States Constitution, Plaintiff had a right to be free from unreasonable searches and seizures and retaliatory prosecutions by law enforcement.  Under the Fourteenth Amendment to the United States Constitution, Plaintiff had a right not to be deprived of life or liberty without due process of law including, but not limited to, unreasonable seizures and searches.

95.     Defendants were final policymakers for Stanislaus County and engaged in a malicious and retaliatory arrest and prosecution of Plaintiff and those acts constitute final constitutional policies of the County of Stanislaus.

96.     The Defendants ratified the conduct of their subordinates and they made deliberate choices to consciously disregard the constitutional rights of Plaintiff to pursue a course of retaliatory and malicious prosecution without probable cause.

97.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Estate of Carson has suffered damages, including, but not limited to, legal expenses and economic losses.

98.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Defilippo has suffered damages, including but not limited to loss of financial support, funeral expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection, society, solace and moral support.

///

///

### SIXTH CAUSE OF ACTION
### Violation of California Civil Code section 52.1
### [Estate of Carson Against All Defendants]

99.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

100.    Plaintiff alleges that the defendants made material misstatements to a court in order to secure Plaintiff's arrest, withheld exculpatory evidence from prosecutors, and caused the initiation of a malicious criminal prosecution against them in violation of their First, Fourth and Fourteenth Amendment rights under the United States Constitution and corresponding rights under the California Constitution.

101.    Plaintiff was subjected to threats, intimidation and coercion that was independent from the threats, intimidation and coercion inherent in any arrest and detention.

102.    Defendants County of Stanislaus and City of Modesto are liable under a theory of respondeat superior.

103.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Estate of Carson has suffered damages, including, but not limited to, legal expenses and economic losses.

104.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Defilippo has suffered damages, including but not limited to loss of financial support, funeral expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection, society, solace and moral support.

105.    In doing the things alleged herein, the individual defendants' conduct was despicable.  The individual defendants acted toward Plaintiffs with malice, oppression, fraud, and with willful and conscious disregard for Plaintiffs' rights, entitling them to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
### False Arrest/Imprisonment
### [Estate of Carson Against All Defendants]

106.    Plaintiff incorporates by reference and reallege each and every allegation set forth

///

above, as though fully set forth herein.

107.    The defendants and Does 1-25, and/or each of them, by their actions caused Plaintiff to be confined or knew to a substantial certainty that Plaintiff would be confined due to their actions.

108.    The defendants were instrumental in causing Plaintiff to be arrested and/or made material misrepresentations and omissions in the arrest warrant that they knew would cause the judge to issue a warrant that was not supported by probable cause.

109.    California Government Code section 820 provides that a public employee is liable for injury to the same extent as a private person.

110.    California Government Code section 820.4 specifically provides that a public employee is liable for false arrest or false imprisonment.

111.    California Government Code section 815.2 provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his/her employment.  Defendants County of Stanislaus and City of Modesto are liable under a theory of respondeat superior.

112.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Estate of Carson has suffered damages, including, but not limited to, legal expenses and economic losses.

113.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Defilippo has suffered damages, including but not limited to loss of financial support, funeral expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection, society, solace and moral support.

114.    In doing the things alleged herein, the defendants' conduct was despicable.  The defendants acted toward Plaintiff with malice, oppression, fraud, and with willful and conscious disregard for Plaintiffs' rights, entitling them to an award of punitive damages.

## **EIGHTH CAUSE OF ACTION**
**Wrongful Death**
**[Georgia Defilippo Against All Defendants]**

115.    Plaintiff incorporates by reference and reallege each and every allegation set forth

above, as though fully set forth herein.

116.     As a direct and proximate result of the wrongful acts alleged above, Frank Carson suffered from deleterious effects to his health conditions, including complications due to uncontrolled diabetes and complications from high blood pressure.  The conditions of Carson's incarceration caused his health to deteriorate and ultimately caused his death on August 12, 2020.

117.     All of the Defendants caused or set in motion a series of events that led to constitutional deprivations of Mr. Carson which ultimately led to his death.

118.     Pursuant to Government Code sections 815.2, Stanislaus County and City of Modesto are vicariously liable for the conduct of the individual Defendants who were acting within the course and scope of their employment.

119.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Defilippo has suffered damages, including but not limited to loss of financial support from Frank Carson, funeral expenses, compensation for the loss of Mr. Carson's love, companionship, comfort, affection, society, solace and moral support.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Estate of Frank Carson and Georgia Defilippo pray for judgment against defendants County of Stanislaus, City of Modesto, Birgit Fladager, David Harris, Marlissa Ferreira, Kirk Bunch, Steve Jacobson, Jon Evers, and Cory Brown requesting entry of judgment as follows:

A.     For general damages in an amount to be determined at trial;

B.     For special damages in an amount to be determined at trial;

C.     For punitive damages against the individuals in an amount to be determined at trial;

D.     For costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and other relevant statutes, including a contingency fee enhancement beyond the lodestar;

E.     For prejudgment interest at the legal rate; and

1     F.     For such other and further relief as the court deems just and proper.

2

3   DATE: November 20, 2020                    GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER

4

5                                              /s/ Jayme L. Walker

6                                              J. Gary Gwilliam
                                               Randall E. Strauss
7                                              Jayme L. Walker
                                               Attorneys for Plaintiff
8                                              FRANK CARSON

9

10

11                              **DEMAND FOR JURY TRIAL**

12          Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

13   a trial by jury.

14

15   DATE: November 20, 2020                    GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER

16

17                                              /s/ Jayme L. Walker

18                                              J. Gary Gwilliam
                                               Randall E. Strauss
19                                              Jayme L. Walker
                                               Attorneys for Plaintiff
20                                              FRANK CARSON

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**
*Frank Carson v. County of Stanislaus, et al.*
**United States District Court, Eastern District of California, Case No. 1:20-cv-00747-TLN-BAM**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER, 1999 Harrison St., Suite 1600, Oakland, California 94612.

On November 20, 2020, I served the following document(s) by the method indicated below:

**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES**

☒ via **ECF ELECTRONIC TRANSMISSION** - By CM/ECF for parties that are CM/ECF participants.  Service is being made electronically on those parties on the below list that are registered users of the Court's Electronic Case Filing System.

☐ via **ELECTRONIC TRANSMISSION** – Based on a court order or agreement among the parties to accept service by email or electronic transmission, I caused each document described herein to be sent to the person(s) at the email address(es) listed below.

☐ via **U.S. MAIL** - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐ via **OVERNIGHT SERVICE** - by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.  A copy of the consignment slip is attached to this proof of service.

| | |
|---|---|
| John R. Whitefleet, Esq.<br>PORTER SCOTT, APC<br>350 University Ave., Suite 200<br>Sacramento, CA 95825<br>Telephone: (916) 929-1481<br>Facsimile: (916) 927-3706<br>Email: jwhitefleet@porterscott.com | Attorneys for Defendants<br>COUNTY OF STANISLAUS, BIRGIT FLADAGER, MARLISSA FERREIRA, DAVID HARRIS, KIRK BUNCH, STEVE JACOBSON, CORY BROWN |

| Bradley J. Swingle<br>Amanda Heitlinger<br>ARATA, SWINGLE, VAN EGMOND &<br>HEITLINGER<br>1207 I Street<br>Modesto, California 95354<br>Telephone:  (209) 522-2211<br>Facsimile:   (209) 522-2980<br>Email: BSwingle@arata-law.com<br>        AHeitlinger@arata-law.com | Attorneys for Defendants<br>CITY OF TURLOCK, CITY OF CERES, DEREK<br>PERRY, TIMOTHY REDD |
| Dale L. Allen, Jr., Esq.<br>Patrick D. Moriarty, Esq.<br>ALLEN GLAESSNER HAZELWOOD<br>WERTH<br>180 Montgomery Street, Suite 1200<br>San Francisco, CA 94104<br>Telephone:  (415) 697-2000<br>Facsimile:   (415) 813-2045<br>Email: DAllen@aghwlaw.com<br>        PMoriarty@aghwlaw.com | Attorneys for Defendants<br>CITY OF MODESTO AND JON EVERS |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on November 20, 2020, at Oakland, California.

_____

Stephanie Wickizer

Certificate of Service