J. Gary Gwilliam, Esq. (State Bar No. 33430)
Randall E. Strauss, Esq. (State Bar No. 168363)
Jayme L. Walker, Esq. (State Bar No. 273159)
Angelina M. Austin (State Bar No. 336250)
GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
1999 Harrison Street, Suite 1600
Oakland, CA 94612-3528
Telephone: (510) 832-5411
Facsimile: (510) 832-1918
Email: ggwilliam@giccb.com; rstrauss@giccb.com; jwalker@giccb.com; aaustin@giccb.com

Attorneys for Plaintiffs
ESTATE OF FRANK CARSON AND GEORGIA DEFILIPPO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF FRANK CARSON AND GEORGIA DEFILIPPO, as an individual and as successor in interest to FRANK CARSON, | Case No. 1:20-CV-00747-TLN-BAM |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO COUNTY OF STANISLAUS, BIRGIT FLADAGER, MARLISSA FERREIRA, DAVID HARRIS, KIRK BUNCH, STEVE JACOBSON, AND CORY BROWN'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| vs. | |
| COUNTY OF STANISLAUS, CITY OF MODESTO, BIRGIT FLADAGER, MARLISSA FERREIRA, DAVID HARRIS, KIRK BUNCH, STEVE JACOBSON, JON EVERS, CORY BROWN, and DOES 1-25, inclusive, | Date: June 16, 2022 Time: 2:00 p.m. Courtroom: 2, 15th Floor |
| Defendants. | Hon. Troy L. Nunley |

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

## Table of Contents

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL SUMMARY ..................................................................................... 2

    A.  Defendants' Conspire to Frame their Outspoken Adversary. ........................... 2

    B.  Defendants Create False Evidence to Frame Carson. ...................................... 4

    C.  The Arrest Warrant Contains Numerous Lies, Fabrications and Material Omissions…….............................................................................................. 5

    D.  The DA Defendants Acted Outside Their Role as State Prosecutors. ................ 7

    E.  Plaintiff is Exonerated. ................................................................................ 8

III. STANDARD OF REVIEW ............................................................................... 9

IV. ARGUMENT ................................................................................................. 10

    A.  Carson's Causes of Action for Judicial Deception and Bane Act Violations Against the DA Defendants Should Be Equitably Tolled. ............................ 10

        1.  Government Code section 945.3 applies to attorneys acting as peace officers .................................................................................................. 10

        2.  There is no prejudice to defendants if the statute of limitations is equitably tolled ................................................................................... 14

    B.  Birgit Fladager, David Harris and Marlissa Ferreira are Liable Under Section 1983 for Their Unconstitutional Actions as Policymakers, Supervisors, and Investigators. .............................................................................................. 13

        1.  There is no 11th Amendment immunity for prosecutors acting as policymakers, supervisors, and investigators ......................................... 13

        2.  Prosecutors are not absolutely immune for unconstitutional conduct outside their prosecutorial role ............................................................ 14

    C.  Plaintiffs State a Claim for Judicial Deception Based on Material False Statements and Omissions in the Arrest Warrant. ........................................ 15

        1.  Plaintiff states facts supporting a judicial deception claim against the county defendants…........................................................................... 15

        2.  Plaintiff states facts supporting a judicial deception claim against Harris, Fladager and Ferreira as supervisors who approved the deceptive warrant. 18

    D.  Plaintiff States Facts Sufficient to Support a Claim for Malicious Prosecution. 18

    E.  Plaintiff States Facts Sufficient to Support a Claim for Retaliatory Prosecution and Retaliatory Arrest. .............................................................................. 19

    F.  Plaintiff States Facts That Show a Government Abuse of Power That Shocks the Conscience and Violates the Due Process Clause of the Fourteenth Amendment…................................................................................................21

        1.  Defendants deliberately fabricated evidence ........................................... 21

        2.  Defendants withheld exculpatory evidence ............................................. 22

    G.  Plaintiff States Facts Sufficient to Allege a *Monell* Claim. .............................. 23

## **Table of Contents  (cont.)**

H.    Plaintiff Has Adequately Pled Constitutional Violations That Support a Claim Based on Civil Code section 52.1 and Defendants Fladager, Harris, and Ferreira Are Not Entitled to Government Code section 820.8 Immunity. ...................... 24

V.    CONCLUSION .......................................................................................................... 25

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

# TABLE OF AUTHORITIES

**Page(s)**

### SUPREME COURT OF THE UNITED STATES

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................ 9

*Buckley v. Fitzsimmons*
  509 U.S. 259 (1993)……………………………………………………… 10

*Burns v. Reed*
  500 U.S. 478 (1991) ............................................................................................14

*Cnty. of L.A. v. Goldstein*
  134 S. Ct. 906 (2014) ..................................................................................14, 24

*County of Sacramento v. Lewis*
  523 U.S. 833 (1998) ............................................................................................21

*Davis v. Scherer*
  468 U.S. 183 (1984) ..............................................................................................9

*Houston v. Hill*
  482 U.S. 451 (1987). ...........................................................................................20

*Imbler v. Pachtman*
  424 U.S. 409 (1976) ............................................................................................14

*Monell v. Dep't of Soc. Servs.*
  436 U.S. 658 (1978) .................................................................................13, 23, 24

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) ............................................................................................24

*Scheuer v. Rhodes*
  416 U.S. 232 (1974) ..............................................................................................9

*Wallace v. Kato*
  549 U.S. 384 (2007) ......................................................................................11, 12

*Wolff v. McDonnell*
  418 U.S. 539 (1974) ............................................................................................21

*///*

*///*

*///*

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

UNITED STATES CIRCUIT COURTS OF APPEAL

*Balistreri v. Pacifica Police Dept.*
  901 F.2d 696 (9th Cir. 1988)................................................................9

*Beck v. City of Upland*
  527 F.3d 853 (9th Cir. 2008)................................................................20

*Bishop Paiute Tribe v. County of Inyo*
  275 F.3d 893 (9th Cir. 2002)................................................................13

*Bradford v. Scherschligt*
  803 F.3d 382 (9th Cir. 2015)…………………………………………... 22

*Bravo v. Santa Maria*
  665 F.3d 1076 (9th Cir. 2011)…………………………………….... 16

*Broam v. Bogan*
  320 F.3d 1023 (9th Cir. 2003)................................................................14

*Butler v. Elle*
  281 F.3d 1014 (9th Cir. 2002)…………….....…………….…………17

*Caldwell v. City & Cty. of San Francisco*
  889 F.3d 1105 (9th Cir. 2018)…................................................................21

*Corales v. Bennett*
  567 F.3d 554 (9th Cir. 2009)................................................................15

*Crowley v. Bannister*
  734 F.3d 967 (9th Cir. 2013)................................................................21

*Daviton v. Columbia/HCA Healthcare Corp.*
  241 F.3d 1131 (9th Cir.2001)................................................................11

*Goldstein v. City of Long Beach*
  715 F.3d 750 (9th Cir. 2013)................................................10, 14, 16, 24

*Gonzalez v. Ysleta Independent School Dist.*
  996 F.2d 745 (5th Cir. 1993)................................................................23

*Hall v. City of Santa Barbara*
  833 F.2d 1270 (9th Cir.1986)................................................................9

*Hervey v. Estes*
  65 F.3d 784 (9th Cir. 1995)................................................................16

///

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Hurt v. Wise*
880 F.3d 831 (7th Cir. 2018)............................................................................25

*Johnson v. State of Calif.*
207 F3d 650 (9th Cir. 2000).............................................................................9

*Lewis v. City of Chicago*
914 F.3d 472 (7th Cir. 2019)...........................................................................25

*Liston v. County of Riverside*
120 F.3d 965 (9th Cir. 1997)...........................................................................16

*Lombardi* v. City of El Cajon
117 F.3d 1117 (9th Cir. 1997).........................................................................17

*McDougal v. County of Imperial*
942 F.2d 668 (9th Cir. 1991)............................................................................9

*Moore v. Valder*
65 F.3d 189, 194 (D.C. Cir. 1995) ..................................................................14

*Navarro v. Black*
250 F.3d 729 (9th Cir. 2001)............................................................................9

*Parkell v. Danberg*
833 F.3d 313 (3d Cir. 2016)............................................................................20

*Tatum v. Moody*
768 F.3d 806 (9th Cir. 2014)...........................................................................22

*Wilkerson v. Seymour*
736 F.3d 974 (11th Cir. 2013).........................................................................24

UNITED STATES DISTRICT COURTS

*Morse v. Cty. of Merced*
No. 116CV00142DADSKO, 2016 WL 3254034 (E.D. Cal. June 13, 2016)...................17

*Pontillo v. Stanislaus County*
2017 WL 3394126 (E.D. Cal. Aug. 8, 2017) ....................................................10

*Webster v. County of Los Angeles*
2012 WL 2071781 (C.D. Cal. June 6, 2012)....................................................10

*Zeen v. Cty. of Sonoma*
No. 17-CV-02056-LB, 2018 WL 2445518 (N.D. Cal. May 31, 2018 ...........................18

*///*

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

CALIFORNIA SUPREME COURT

*Lantzy v. Centex Homes*
    31 Cal.4th 363 (2003)....................................................................................11

*McDonald v. Antelope Valley Community College Dist.*
    45 Cal.4th 88 (2008)......................................................................................11

*Pitts v. County of Kern*
    17 Cal.4th 340 (1998)....................................................................................13

*Soukup v. Law Offices of Herbert Hafif*
    39 Cal.4th 260 (2006)....................................................................................20

CALIFORNIA COURTS OF APPEAL

*Appalachian Ins. Co. v. McDonnel Douglas Corp.*
    214 Cal.App.3d (1989)…………………………………………………… 11

*Cornell v. City & County of San Francisco*
    225 Cal.Rptr.3d 356 (Cal. App. 1 Dist. 2017) ...........................................24

*Grassilli v. Barr*
    142 Cal.App.4th 1260 (2006)........................................................................20

*Nunez v. Pennisi*
    241 Cal.App.4th 861 (2015)..........................................................................19

*Wolfsen v. Wheeler*
    130 Cal.App. 475 (1933)...............................................................................25

*Zucchet v. Galardi*
    229 Cal.App.4th 1466 (2014)........................................................................19

U.S. CONSTITUTION

U.S. Const. amend. IV..........................................................................................13

U.S. Const. amend. XI..........................................................................................21

U.S. Const. amend. XIV........................................................................................21

STATUTES

42 U.S.C. § 1983 ...........................................................................................14, 18

Cal. Civil Code, § 52.1 .........................................................................................24

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

Plfs.' Opp to Def. Stanislaus, et
al.'s Mtn to Dismiss SAC
    iv    Case No. 1:20-cv-00747-TLN-BAM

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

Cal. Gov. Code, § 820.8 ................................................................................................25

Cal. Gov. Code, § 945.3 ................................................................................................10

<u>RULES</u>

Fed. R. Civ. P., rule 12(b)(6) ..........................................................................................9

<u>SECONDARY SOURCES</u>

CACI 1500 ...................................................................................................................19

9th Cir. Model Civil Jury Instruction 9.33 ...................................................................21

9th Cir. Model Civil Jury Instruction 9.33A ................................................................21

Michael Avery, David Rudovsky, Karen M. Blum, and Jennifer Laurin, Police Misconduct:
    Law and Litigation (November 2021 Update) ........................................................21

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

## I.     <u>INTRODUCTION</u>

Frank Carson ("Carson") was a successful Stanislaus County criminal defense attorney who was the victim of a political vendetta. The Defendant law enforcement officials for Stanislaus County – stung by a series of high-profile defeats by Carson – falsely and maliciously concocted a fanciful tale, wherein Carson, concerned about the theft of antiques from his property, resorted to murder for hire. On August 14, 2015, Carson was falsely arrested for his alleged involvement in the murder of a local thief and drug addict, Korey Kaufman.

At Carson's preliminary hearing and criminal trial, the Defendants presented their preposterous theory that Kaufman was killed when he allegedly trespassed onto Carson's property to steal some metal pipes. There was no circumstantial evidence connecting Carson to the murder of Kaufmann; there was no blood, hair, clothing fibers, fingerprints, spit, sweat, or any such thing found on Mr. Carson's property where the Defendants claimed the murder occurred. There was not probable cause to believe Carson had committed any crime and Defendants knew it; after all, they had secured his arrest with fabricated testimony from career criminals who were given deals or leniency in their own criminal charges in exchange for statements against Carson. On June 28, 2019, Carson was acquitted of all charges. Sadly, Carson died on August 12, 2020, as a direct result of the conditions of his imprisonment.

Defendants now seek to dismiss portions of Plaintiffs' Second Amended Complaint[1], by in large, by claiming Plaintiffs have not alleged sufficient facts despite the very detailed allegations pled within the Second Amended Complaint. In arguing for prosecutorial immunity, Defendants entirely ignore the detailed allegations that the District Attorney (DA) Defendants were acting outside their roles as prosecutors. These defenses only apply to DA's acting in their prosecutorial role. Since Plaintiffs' complaint alleges only causes of action against the DA Defendants based on their roles as investigators, supervisors and local policymakers, these immunities are not available to them.

---

[1] Plaintiffs note that Defendants do not seek to dismiss §1983 malicious prosecution claims against Defendants Bunch, Brown and Jacobson, the state law false arrest claim against Bunch, Brown and Jacobson, nor the Wrongful Death claim.

At the pleading stage, Plaintiffs have stated facts sufficient to support all of their claims against each of the Defendants, and as such, the Motion to Dismiss should be denied in its entirety.

## II.    FACTUAL SUMMARY

### A.    Defendants' Conspire to Frame their Outspoken Adversary.

Frank Carson was a prominent criminal defense attorney who had actively worked to expose corruption within the ranks of Stanislaus County law enforcement.  Mr. Carson was an extremely successful attorney, especially in cross-examining dishonest police officers and investigators, and had several high-profile verdicts in his favor and against the Stanislaus County DA's Office.  As a result of Carson's success, he was reviled by many in law enforcement and in the Stanislaus County District Attorney's office.  (SAC ¶ 28).

On August 14, 2015, Frank Carson was falsely arrested and maliciously accused of being involved in an elaborate murder for hire scheme that resulted in the murder of Korey Kauffman, who had allegedly been stealing from Carson's property the night he disappeared.  In a stunning turn of events, law enforcement maliciously went after his family as well.  Plaintiff Georgia DeFilippo ("Georgia"), Carson's widow, and Plaintiff Christina DeFilippo ("Christina"), Carson's stepdaughter, were also arrested and charged with murder and accessory to murder, respectively.  (SAC ¶ 52).  They were both discharged after the prosecution failed to produce *any* evidence against them in an eighteen (18) month preliminary hearing and the judge found there was not probable cause to charge them with any crimes.  (SAC ¶ 8).

Defendants concocted a theory to go after Carson in which brothers Baljit Athwal and Daljit Athwal, owners of a convenience store in Turlock, and their employee, Robert Woody, were solicited by Carson to murder thieves on his property in exchange for his representation of Woody in a minor criminal case. (SAC ¶ 53).  The Athwals, Woody, and three California Highway Patrol Officers - Eduardo Quintanar, Scott McFarlane, and Walter Wells - were also falsely arrested as being involved in the murder of Kauffman as part of this preposterous theory.  (*Id.*)

Defendants' theory arose because Frank Carson and his widow, Plaintiff Georgia DeFilippo, had a hobby of collecting and selling antiques.  They owned two properties in Turlock, California, where they stored many of their antiques, and Christina lived in one of the

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1  properties.  The Carson family discovered that their neighbor, Michael Cooley, a career criminal

2  and drug dealer, was likely involved in thefts when they saw a hole in their fence and a beaten

3  path from a storage unit at their home to the home rented by Cooley.  The Carson family

4  contacted law enforcement, but unfortunately Cooley was not arrested.  (SAC ¶ 32).

5        Thereafter, the Carson family took steps to prevent additional thefts of their property.

6  They left lights on in the house and installed a motion detector.  Carson also repaired sheds and

7  locks to bolster security.  Carson created a stolen book alert, to give to book dealers in the area in

8  the hopes that someone would call the Sheriff's Department and report if his stolen books were

9  presented for purchase.  Contrary to lies told to the court and the public by Stanislaus County

10  Deputy District Attorney Defendant Marlissa Ferreira, Korey Kauffman was not included on this

11  list as a suspected thief.  Indeed, there was never any evidence that Carson, Georgia, or Christina

12  even knew Mr. Kauffman.  (SAC ¶ 33).

13        Rather, Korey Kauffman was an associate of the Cooley family and made his living by

14  stealing things and recycling them for money.  He was a known thief and drug addict and had

15  many enemies, including drug dealers from whom he had stolen.  Mr. Kauffman went missing on

16  March 29, 2012.  The last person to see Kauffman alive was Michael Cooley.  (SAC ¶ 30).

17        Kauffman was reported missing by his family on April 2, 2012.  The same day,

18  Defendant Bunch filed a police report stating Michael Cooley reported Kauffman had planned to

19  go to Carson's property to steal the night he disappeared.  Bunch immediately relayed Carson's

20  connection to the Cooley property to Defendant Harris.  Suddenly, the DA's Office became very

21  interested in this run of the mill missing person case.  (SAC ¶ 31).

22        Thereafter, the District Attorney Defendant Birgit Fladager and Chief Deputy District

23  Attorney Defendant David Harris convened a task force for the purpose of destroying Frank

24  Carson.  It is highly unusual for the District Attorney's office to lead an investigation into a

25  missing person, yet at the mere mention of Frank Carson's name, the District Attorney's office,

26  became the lead investigating agency on this case.  Just like that, the conspiracy to frame Carson

27  for murder was born.  (SAC ¶ 34).

28  ///

B.    **Defendants Create False Evidence to Frame Carson.**

Defendant Fladager supervised Defendants Harris and Ferreira.  (SAC ¶ 37).  From the inception of the investigation, Defendant Harris supervised Defendant investigators Bunch, Brown, Jacobson and Evers.  (*Id*.).  In 2015, when Harris was accused of jury tampering and contempt of court in a case he had with Carson, Defendant Marlissa Ferreira took over as the supervisor of the investigation and of Bunch, Jacobson and Brown.  (*Id*.).

During the course of the investigation into the murder of Kauffman, Defendants Harris, Ferreira, Bunch, Jacobson, and Brown were party to coercion and intimidation of witnesses and used unduly coercive interviewing techniques that they knew or should have known created false evidence against Frank Carson.  They used promises of leniency in the witnesses' own criminal charges to purposefully illicit fabricated evidence against Carson.  Almost every witness that in any way implicated Frank Carson was a career criminal whose own criminal charges were dropped or significantly reduced in exchange for testimony against Carson, including Miranda Dykes, Michael Cooley, Eula Keyes and Robert Woody.  (SAC ¶ 43; 47; 54(g)).

In February 2014, Robert Woody, an employee of the Pop N Cork liquor store owned by the Athwals, was recorded on a wire bragging to a young woman that he alone had killed Korey Kauffman, cut him up, and fed him to pigs.  This did not match the physical evidence of the crime. (SAC ¶ 43).  Yet, investigators and their supervisors pursued the implausible lead because as tenuous as it may have been, Woody via the Athwals, was their *only link* to Carson.

Woody was arrested March 1, 2014.  During his 7-hour interrogation by Defendants Bunch, Jacobson and Evers, he repeatedly denied any involvement in the Kauffman. (SAC ¶ 45). Mysteriously, the marathon interrogation recording has a long gap in which Woody is said to be going to the bathroom.  (SAC ¶ 47).  Defendants Jacobson and Bunch accompanied him to the bathroom and away from recording devices where they coerced Woody to falsely accuse his employers, the Athwals, and Frank Carson of being involved in the murder of Kauffman in exchange for leniency in any charges against him.  (*Id*.)  It was only after this unrecorded "bathroom break" that Woody's story abruptly changed, and he began to repeat part of what he was told.  (*Id*.)  Woody repeated to Defendants Bunch, Jacobson, and Evers the theory that they

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1    laid out for him over the last seven hours: that his employers, Baljit Athwal and Daljit Athwal

2    had murdered Kauffman and that they did it because they were asked by Carson to watch over

3    his property for thieves. (*Id.*)  Evers was complicit in obtaining Woody's false confession

4    because he was fully aware that Defendants Bunch and Jacobson had in fact pressured Woody to

5    repeat law enforcements false narrative during the "bathroom break."

6         **C.     The Arrest Warrant Contains Numerous Lies, Fabrications and Material
7              Omissions.**

8         On August 13, 2015, with no more evidence against Carson than Robert Woody's

9    testimony, which was unreliable and completely unbelievable, had repeatedly changed over time,

10   and even contradicted the physical evidence in the case, Defendant Cory Brown submitted a

11   Ramey Warrant for Carson's arrest.  The preparation of the arrest warrant affidavit was a joint

12   effort that resulted in what Brown described in his deposition as a "group consensus" between

13   himself and Defendants Fladager, Ferreira, Bunch, Evers and Jacobson on what charges to seek

14   and what facts to include in the warrant.  (SAC ¶ 51).

15        There were numerous false and misleading statements, fabrications, and material omissions

16   in the warrant to secure Carson's arrest.  The warrant included the following fabrications:

17   • The arrest warrant indicates that Kaufman disappeared on March 30, 2012.  Defendants
        knew this was not true but asserted this date because their junk cell phone expert Jim
18      Cook gave opinions implicating that Carson, Wells and the Athwals were in the vicinity
        of Carson's Turlock property on the night of March 30, 2012.  This expert's testimony
19      was later excluded from the criminal trial after he admitted under oath that the cell
        towers showed that the Athwals were never on the Carson property the night of March
20      30, 2012.

21   • The warrant alleges that Kauffman was going over the fence to steal metal pipes, but
        law enforcement knew full well there were never any pipes on Carson's property.
22

23   • The arrest warrant says Carson visited Ron Cooper in jail to solicit his "muscle" to help
        him with thefts on his property.  It was easily verifiable that Carson had never visited
24      Cooper in jail, yet Defendants omitted this fact from the arrest warrant.

25   • The warrant falsely states that "Investigators have followed up on **every lead** that has
        been brought to the attention regarding Kauffman going missing and being murdered to
26      the best of their ability." (Bold added.) In fact, unbeknownst to the judge who signed
        the arrest warrant, there were many suspects who had threatened to kill or harm
27      Kauffman who were not investigated and who were not mentioned in the arrest warrant.
        (*See* SAC ¶ 38(a)-(n).)

28

GW ILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

- Defendants made several false and misleading representations in the warrant to place Frank Carson and his wife and daughter in a negative light, including omitting an "LOL" from a text message that clearly indicated they were joking, misrepresenting Carson's interactions as an officer of the court, including falsely stating that Carson lied in a 911 call he made when Defendants trespassed at his law office and would not leave.

- Defendant Brown admitted in deposition that Jim Cook was the only source for the critical – and false – assertion in Brown's arrest warrant affidavit that Baljit Athwal went to the "specific area" where the body was found. Indeed, Brown testified that he does not recall where the "specific area" language came from. In truth, there was never any evidence that Baljit Athwal was anywhere near the body and telling the Court that he was in the "specific area" where the remains were found is, as Brown now admits, inherently misleading.

In addition, the rambling 325-page document purposefully omitted the following:

- The warrant deliberately omitted any information about the physical evidence because Defendants knew that the physical evidence, including the fact that there was no blood, hair, clothing fibers, fingerprints, spit, sweat, or any such thing found on Mr. Carson's property where the Defendants claimed the murder occurred or at the Pop N Cork where Kauffman was allegedly buried, showed there was not probable cause to arrest Carson.

- The warrant fails to disclose that Cooley also accused other people of being involved in the murder of Kauffman including Tina Carlos, Victor Altamirano, and Brandon Starr.

- The warrant failed to inform the judge that Cooley admitted to witnesses that he was involved in Kauffman's murder.

- The warrant does not disclose what the affiant, Brown, has recently admitted in deposition—that the cell phone tower expert Jim Cook's opinions are (at least in significant part) based on "inherently misleading" theories.

- The warrant failed to inform the judge that drug dealers, McMillan and Armstrong, were seen on game cameras near where the body was found prior to public disclosure.

- The arrest warrant did not contain any information about the lack of credibility of the witnesses, including multiple contradictory statements by witnesses, especially Robert Woody's several different statements where he denied involvement altogether or said the Athwals hired a Mexican prison buddy to kill Kauffman (even though neither Athwal had ever been to prison).

- The warrant omitted the extreme coercion and improper tactics, such as contamination, employed to fabricate Robert Woody's statements as detailed above. Even though law enforcement fed Woody non-public facts of the murder, he never provided any on his own, they falsely claimed in the warrant that he knew non-public facts about the crime. No reasonable law enforcement officer would have believed that Woody's testimony established probable cause to arrest anyone, especially when it contradicted the physical evidence of the crime.

- The warrant does not disclose that Robert Woody—the only alleged eyewitness—had no idea where the body was, even though he supposedly buried it.

- The warrant failed to inform the judge of grants of immunity or plea deals given to nearly every witness in exchange for their statements against Carson, including but not limited to, Robert Woody, Michael Cooley, his girlfriend Eula Keyes, her son, Keith Hobbs (who were given immunity or had their cases dropped for various drug crimes), Ron Cooper, Patrick Hampton (another career criminal who gave a statement that Carson tried to solicit him to watch over his property at the courthouse), and others.

- The warrant fails to disclose that at least three key witnesses mentioned in the affidavit (Mike Cooley, Eula Keyes, and Keith Hobbs) — the last people who saw Kauffman alive — were each found to be "deceptive" about their knowledge of Kauffman's disappearance when voice stress analysis tests were administered.

- The warrant did not disclose the Defendants' bias against Carson, including Carson's civil lawsuit against Jacobson for assault, a jury tampering hearing against Jacobson and Harris, and the accusations that Carson had made against Bunch were never disclosed in any warrants

- The Defendants omitted evidence that other career criminals, like Rudy Gonzales, had made death threats against Mr. Kauffman just 48-hours before his disappearance and ignored the fact that Mr. Kauffman had stolen marijuana from a known drug dealers, Armstrong and McMillen, and that his body was found near a marijuana farm associated with them.  (SAC ¶ 38(b) and (e)).

- The Defendants omitted that Michael Cooley himself should have been a prime suspect in the case since he was the last person to see Korey Kauffman alive, buried Kauffman's bicycle in his backyard after Kauffman's disappearance, and Cooley confessed to a witness that he killed Kauffman saying, "that's what he gets for messing with our money." (SAC 38(a)).

(SAC ¶ 54).

**None of this exculpatory evidence was disclosed to the judge in the arrest warrant for Frank Carson.**

Indeed, there was never a shred of evidence that a murder had occurred on Frank Carson's Turlock property.  There was no blood, hair, clothing fibers, fingerprints, spit, sweat, or any such thing found on Mr. Carson's property where the Defendants claimed the murder occurred.  (SAC 54r).  There was allegedly a gunshot that no one heard in a neighborhood full of people.  (SAC ¶ 55).  There was no blood, hair, clothing fibers, fingerprints, spit, sweat, or any such thing found at the Pop N Cork liquor store where the body was allegedly taken and buried for months until it was supposedly dug up by the Athwals and taken to the mountains.  (SAC 54(r).)  This burial allegedly occurred in a crowded neighborhood with no witnesses, and where numerous law enforcement frequented, yet no one so much as smelled a decomposing body that was allegedly a mere 14 inches underground right behind the backroom where law enforcement regularly gathered to drink after their shifts. (SAC ¶ 48).  **None of this exculpatory evidence was included in the arrest warrant**.

### D.    The DA Defendants Acted Outside Their Role as State Prosecutors.

In furtherance of the conspiracy to frame Frank Carson, Defendant Birgit Fladager, David Harris and Marlissa Ferreira acted outside their roles as prosecutors and acted as supervisors,

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

investigators and administrators.  Defendants Fladager, Harris and Ferreira gave legal advice to investigators and police officers including advice that they had probable cause to arrest, engaged in the planning, drafting and execution of the arrest warrant based on evidence they knew was false, coerced and fabricated evidence in order to arrest Plaintiff, and otherwise fully participated in and advised the officers and investigators throughout the investigation in which probable cause never existed to arrest Frank Carson.  (SAC ¶ 57(f); 58(l); 59(l)–(m)).

While acting in an investigatory role, Defendant Ferreira visited the owner of an antique mall and asked if Carson ever sold guns, to which she was told no.  This was never disclosed as Brady material or documented in any police report.  (SAC ¶ 59(m)(iii)).  Ferreira also accompanied Robert Woody to the location of Kauffman's remains where evidence flags showed the exact location to create the false impression that Woody "knew" where they body was and to support his false confession.  (SAC ¶ 59(m)(v)).  Ferreira acted with the consent and knowledge of defendants District Attorney Birgit Fladager and Chief Deputy David Harris, and all were co-conspirators with the other defendants.  (SAC ¶ 56).

### E.  Plaintiff is Exonerated.

Carson's preliminary hearing began on October 13, 2015, and continued for 18 months, one of the longest in California history.  During the preliminary hearing, Defendant Jacobson procured further false testimony from Robert Woody because there was not enough evidence linking Frank Carson and CHP Officer Walter Wells to the murder.  Defendant Jacobson had Robert Woody's mother, Beverly Woody, hold up a note to Robert Woody during a jail visit telling him they needed more implicating Carson and Wells.  Following this, Woody changed his story for the umpteenth time and said Carson and Wells were on the property the night Kauffman was murdered.  Woody recanted this statement several days later.  (SAC ¶ 68(g)).

On June 28, 2019, after a jury trial that lasted more than a year, the jury acquitted Carson of all charges after less than two days of deliberations.  (SAC ¶ 66).  Unfortunately, his health had deteriorated due to the conditions of his 17-month long confinement.  (*Id.*)  The jail where Carson was housed was closed for inhumane conditions just months after he was released.  (*Id.*)  Carson suffered from high blood pressure, went into kidney failure and had to be on dialysis.

G WILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1  (*Id.*)  Sadly, Frank Carson died August 12, 2020, at the age of sixty-six (66) years-old, as a direct
2  result of the conditions of his imprisonment.  (*Id.*)

3  **III.   STANDARD OF REVIEW**

4   It is axiomatic that motions to dismiss under Rule 12(b)(6) are viewed with disfavor and
5  are rarely granted.  *McDougal v. County of Imperial*, 942 F.2d 668, 676 (9th Cir. 1991) (quoting
6  *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir.1986)).  A 12(b)(6) motion to
7  dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set
8  of facts in support of his claim which would entitle him to relief. In determining whether a
9  complaint states a claim upon which relief can be granted, the Court must assume that "all the
10  allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550
11  U.S. 544, 555 (2007).  The liberal construction rule is particularly important in civil rights cases.
12  *Johnson v. State of Calif.* 207 F3d 650, 653 (9th Cir. 2000).  At the pleading stage, plaintiffs
13  must merely "nudge[] their claims across the line from conceivable to plausible."  *Twombly*,
14  *supra*, 550 U.S. at 570.

15   In deciding a motion to dismiss, "all material allegations of the complaint are accepted as
16  true, as well as all reasonable inferences to be drawn from them."  *Navarro v. Black*, 250 F.3d
17  729, 732 (9th Cir. 2001).  Dismissal is proper "only where there is no cognizable legal theory or
18  an absence of sufficient facts alleged to support a cognizable legal theory."  *Id.* at 732 (citing
19  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988)).  The sole issue raised by a
20  Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a plausible claim
21  for relief.  Thus, no matter how improbable the facts alleged are, they must be accepted as true
22  for purposes of the motion.  *Twombly*, *supra*, 550 U.S. at 556.  Subject to the "plausibility"
23  requirement, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual
24  proof of those facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* at
25  556.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is
26  entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974),
27  overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984)).
28  ///

IV.   **ARGUMENT**

    A.   **Carson's Causes of Action for Judicial Deception and Bane Act Violations Against the DA Defendants Should Be Equitably Tolled.**

        Defendant argues that Plaintiff's claims for judicial deception and false arrest are barred by the statute of limitations. Plaintiffs submit that these causes of action should be tolled because the DA Defendants were acting as police investigators and police supervisors. Therefore, the same tolling that applies to peace officers under Government Code section 945.3 should apply. In the alternative, the statute of limitations should be equitably tolled.

        1.   **Government Code section 945.3 applies to attorneys acting as peace officers**

        Defendant argues that Plaintiff's judicial deception claim, any claims based on the supervising of the investigation, or false arrest are time barred and not tolled by Government Code section 945.3. Defendant cites *Pontillo v. Stanislaus County,* 2017 WL 3394126 (E.D. Cal. Aug. 8, 2017) which ironically is a case that Frank Carson won an acquittal for the criminal defendant and in which both Steve Jacobson and David Harris were involved and named as Defendants in the civil suit. Defendant also cites *Webster v. County of Los Angeles,* 2012 WL 2071781 (C.D. Cal. June 6, 2012). There does not appear to be allegations in either of these cases that the prosecutors sued were involved in the investigations or were engaged in conduct that was investigatory or conduct normally engaged in by a police supervisor. As such, these cases do not support that claims against prosecutors, acting not as prosecutors but as police investigators, are not tolled per California law. When applying this conduct in terms of immunity, the Supreme Court has found that prosecutors should not receive greater protections than police. *Buckley v. Fitzsimmons* 509 U.S. 259, 273 (1993). For these reasons, the court should apply Government Code section 945.3 tolling the statute of limitations for the DA Defendants acting as police investigators and supervisors for purposes of liability based on judicial deception and false arrest/Bane Act claims.

///

///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**2.      There is no prejudice to defendants if the statute of limitations is equitably tolled**

In 1983 cases, courts look to state law tolling rules.  *Wallace v. Kato*, 549 U.S. 384, 394 (2007).  Equitable tolling is "designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied." *Appalachian Ins. Co. v. McDonnell Douglas Corp.,* 214 Cal.App.3d 1, 38 (1989). Where applicable, the doctrine will "suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes,* 31 Cal.4th 363, 370 (2003).

In *McDonald v. Antelope Valley Community College Dist.,* 45 Cal.4th 88 (2008), the court noted that the application of the doctrine of equitable tolling:

> serves the need for harmony and the avoidance of chaos in the administration of justice. Tolling eases the pressure on parties concurrently to seek redress in two separate forums with the attendant danger of conflicting decisions on the same issue. The tolling doctrine does so without compromising defendants' significant interest in being promptly apprised of claims against them in order that they may gather and preserve evidence because that notice interest is satisfied by the filing of the first proceeding that gives rise to tolling. Lastly, tolling benefits the court system by reducing the costs associated with a duplicative filing requirement, in many instances rendering later court proceedings either easier and cheaper to resolve or wholly unnecessary.

*Id.* at 99–100 (internal citations omitted).

Under the equitable tolling doctrine, the limitations period is tolled when "the record shows '(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'"  *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137–1138 (9th Cir.2001).

Plaintiff's claim for False Arrest/Judicial Deception is based on the fact that he was arrested and prosecuted based on deliberately fabricated evidence and false statements and material omissions in the arrest warrant.  The deliberately fabricated evidence arose in large part based on the false statements by Robert Woody which the DA and County Defendants knew were false.  Defendant Ferreira was party to creating Woody's false statements and Harris and

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1    Fladager were supervising and condoned the fabrication as part of the conspiracy against Carson.

2    (SAC ¶ 59(i); 57-58).  Plaintiff was incarcerated based on this false and fabricated evidence until

3    December, 2016 when he was released due to egregious *Brady* violations during the preliminary

4    hearing.  Carson was engaged in a grueling preliminary hearing that lasted from October 13,

5    2015 to April 10, 2017.  He was held to answer following the preliminary hearing in large part

6    because of the continued fabricated testimony of Robert Woody which was coerced and created

7    by the Defendants in this case.  (See e.g. SAC ¶ 59(i)).  It was at this time, that his claim for false

8    arrest/judicial deception arose.  However, since Plaintiff was held over for prosecution, he was

9    thus engaged in a criminal trial where he was fighting for his life, while undergoing dialysis and

10   his health was failing. (SAC ¶ 66).  The criminal trial went on from April 2018 until Plaintiff

11   was acquitted on June 28, 2019.

12         Notably, allowing equitable tolling will not cause any prejudice to the County Defendants

13   because they were fully on notice of the claims Carson would ultimately make because the false

14   arrest/judicial deception claims of his wife and stepdaughter, Georgia and Christina Defilippo

15   based on the exact same facts were filed on April 10, 2018, well within the two-year statute of

16   limitations for Carson.

17         Moreover, Plaintiff's claims against Defendants were largely the same in his prelim and

18   criminal trial as they are here: that the criminal charges against him were part of a retaliatory

19   witch hunt designed to settle the score with him for his decades of advocacy exposing their

20   corruption.  As a practical matter, Plaintiff's claims in this case were subject to his acquittal.  He

21   couldn't possibly move forward with a civil case claiming the arrest warrant was false while he

22   was subject to criminal trial based on the exact same facts.  This would allow for the possibility

23   of inconsistent findings of fact and chaos in the administration of justice. Defendants should not

24   benefit from subjecting Plaintiff to a years-long criminal process before justice was finally done.

25   If ever there was a set of circumstances that required equitable tolling, it is these circumstances.[2]

26

27   _____

28   [2] Plaintiff anticipates that Defendant will argue that equitable tolling was rejected by the U.S.
Supreme Court in *Wallace v. Kato*, 549 U.S. 384, 394 (2007).  However, the Supreme Court
specifically noted that it looked to state law on this issue of equitable tolling.  Plaintiff submits

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**B.      Birgit Fladager, David Harris and Marlissa Ferreira are Liable Under Section 1983 for Their Unconstitutional Actions as Policymakers, Supervisors, and Investigators.[3]**

      **1.      There is no 11th Amendment immunity for prosecutors acting as policymakers, supervisors, and investigators**

Defendants argue that the District Attorney Defendants have immunity from suit under the 11th Amendment when they are acting as prosecutors.  However, Plaintiff has not made any claims against the DAs for conduct in their roles as prosecutors.  Plaintiffs' Complaint specifically pleads that the District Attorney Defendants were acting outside their role as prosecutors for the acts that violated Plaintiff's constitutional rights.  (See SAC ¶¶ 57-59 alleging Fladager, Harris and Ferreira acted as a police supervisors and investigators when they ratified investigatory police conduct that created false evidence to secure Carson's arrest; reviewed and approved the arrest warrant with knowledge of its falsity, and worked with police to create false evidence against Carson.).  As such, *Pitts v. County of Kern*, 17 Cal.4th 340 (1998) and its progeny, cited by the Defendants to support their argument for 11th Amendment immunity, are wholly inapplicable.

When District Attorneys perform investigatory and other functions, outside their roles as public prosecutors, they act on behalf of the County not the state.  *See, e.g., Bishop Paiute Tribe v. County of Inyo,* 275 F. 3d 893, 906–10 (9th Cir.2002) (reviewing state constitution and statutes and concluding that district attorney and sheriff acted as county officials in obtaining and executing search warrant), *vacated on other grounds,* 538 U.S. 701 (2003).  In addition, when District Attorneys act as final policymakers for purposes of *Monell* liability, they act as local policymakers, rather than state actors, such as when "establishing administrative policies and

_____

that California law supports equitable tolling as noted in the citations herein. (*See also Alvarez-Machain v. U.S.,* 107 F. 3d 696, 701 (9th Cir. 1996) overruled on other grounds by *North American Broadcasting, LLC v. U.S.* 306 Fed.Appx. 371, 373 (9th Cir. 2008).

[3] Plaintiff concedes that Fladager and Harris sued in their official capacity is redundant of claims against Stanislaus County for the final policymaking and ratification by Fladager and Harris and agrees to dismiss them in their official capacity.  Moreover, Plaintiffs do not make any claims against Fladager, Harris or Ferreira for conduct in their roles as prosecutors.

1   training related to the general operation of the district attorney's office." *Goldstein v. City of*

2   *Long Beach,* 715 F.3d 750, 759-60 (9th Cir. 2013), *cert. denied sub nom. Cnty. of L.A. v.*

3   *Goldstein*, 134 S. Ct. 906 (2014).

4         The acts alleged are outside the Defendant District Attorneys roles as state prosecutors,

5   and as such, they are not immune from suit by virtue of the 11th Amendment.  See *Moore v.*

6   *Valder* 65 F.3d 189, 194 (D.C. Cir. 1995), "Intimidating and coercing witnesses into changing

7   their testimony is not advocatory. It is rather a misuse of *investigative* techniques legitimately

8   directed at exploring whether witness testimony is truthful and complete and whether the

9   government has acquired all incriminating evidence. It therefore relates to a typical police

10   function, the collection of information to be used in a prosecution."  See also, *Burns v. Reed* 500

11   U.S. 478, 492–493, (1991) denying absolute immunity for giving advice to police during

12   investigative stage and for advising police as to whether probable cause existed for an arrest

13   warrant.

       **2.**       **Prosecutors are not absolutely immune for unconstitutional conduct**
14
                    **outside their prosecutorial role**

15

16         Similarly, the DA Defendants are not entitled to absolute immunity for their supervisory,

17   investigatory and administrative conduct outside their roles as state prosecutors.  A state

18   prosecutor "is entitled to absolute immunity from liability under section 1983 for violating a

19   person's federal constitutional rights when he or she engages in activities 'intimately associated

20   with the judicial phase of the criminal process.'"  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th

21   Cir.2003), quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Only qualified immunity is

22   available, however, to a prosecutor "performing investigatory or administrative functions."  *Id.* at

23   1028.  "Actions that are not directly related to the judicial process do not give rise to absolute

24   immunity, even if they occur after a prosecution is initiated."  *Broam, supra*, 320 F.3d at 1031.

25   This includes when prosecutors give legal advice to police in the investigative phase of a

26   criminal case.  *See Burns, supra.*

27         When acting as supervisors of a police investigation, the DA Defendants should not be

28   conferred more protections than a police supervisor.  Supervisory liability is imposed when a

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1  supervisor's "own culpable action or inaction in the training, supervision, or control of his

2  subordinates, for his acquiescence in the constitutional deprivations of which the complaint is

3  made, or for conduct that showed a reckless or callous indifference to the rights of others."

4  *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).

5      Here, the DA Defendants acted as supervisors of the Kauffman investigation from its

6  inception.  They attended daily briefings or were provided with individual updates by

7  investigators.  (SAC ¶ 57-59) Because of their creation of the investigation and their regular

8  supervision and administrative functions, the DA Defendants knew of and were party to the

9  conspiracy to create of false evidence and approved of its submission in support of an arrest

10 warrant.  Importantly, neither Harris nor Fladager ever acted as the prosecutor in the case against

11 Plaintiffs.  Rather, they acted as supervisors and administrators.  While Defendant Ferreira did

12 act as the prosecutor, the complaint alleges multiple acts by Ferreira that were outside her

13 prosecutorial role and also allege she acted as a supervisor, investigator and administrator. (SAC

14 ¶ 59(m)).  Defendant Ferreira was personally involved in assisting Beverly Woody pass notes

15 encouraging Robert Woody to fabricate testimony against Carson. (*Id.*)  She also helped create

16 Jim Cook's "inherently misleading" cell maps by instructing him which points to

17 include/represent on his maps and which to exclude.  (SAC ¶ 59(k)).  When District Attorneys

18 act as supervisors of police officers in the purposeful creation of false evidence against innocent

19 people, they are not entitled to absolute immunity, because such conduct is outside their role as

20 prosecutors and disconnected from the judicial phase of the criminal process.

21   **C.    Plaintiffs State a Claim for Judicial Deception Based on Material False Statements and Omissions in the Arrest Warrant.[4]**

22

23      **1.    Plaintiff states facts supporting a judicial deception claim against the county defendants**

24     In a civil rights case, a Plaintiff may establish false arrest by showing "an officer

25 submitted an affidavit that contained statements he knew to be false or would have known were

26

27  _____

28 [4] Plaintiffs agree to voluntarily dismiss any claims based on search warrants and go forward solely with regard to the falsities and omissions alleged with regard to the arrest warrant.

1  false had he not recklessly disregarded the truth and no accurate information sufficient to

2  constitute probable cause attended the false statements." *Hervey v. Estes*, 65 F.3d 784, 788 (9th

3  Cir. 1995).  Where the plaintiff bringing such a claim can make a "substantial showing" of

4  "deliberate falsehood or reckless disregard for the truth," and but for the misstatement or

5  omission, probable cause would have been lacking, "the matter should go to trial." *Liston v.*

6  *County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997) (quoting *Estes*, 65 F.3d 784 at 788-89;

7  *see also Bravo v. Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

8       Here, Cory Brown was the affiant of the warrant.  Therefore, he is responsible for all

9  false statements and material omissions in the warrant.  However, Brown admitted in his

10  deposition that the arrest warrant was the end result of a "group consensus" that included

11  Fladager, Ferreira, Bunch, Evers and Jacobson.  (SAC ¶ 51).  Plaintiff set forth substantial facts

12  showing misstatements, fabrications and material omissions from the arrest warrant including the

13  fact that Kauffmann actually disappeared on a different date than alleged in the warrant, that

14  there were other suspects that threatened to kill Kauffman just before his disappearance that were

15  omitted from the warrant, that the cell phone data was fabricated, that Cooley had admitted to

16  others he killed Kauffman, that there was no physical evidence to support Robert Woody's

17  accusations against Carson and the Athwals, that the last three people to see Kauffman alive -

18  Cooley, Keyes, and Hobbs - were found to be "deceptive" about their knowledge of his

19  disappearance, and omission of substantial issues with the credibility of the main witness, Robert

20  Woody, or the extreme coercion used to secure his statements.  (SAC ¶ 45-49; 54).

21       Fladager, Ferreira, Bunch, Evers, and Jacobson are each individually responsible for the

22  contents of the warrant because they reviewed the warrant, participated in what facts to include

23  within the warrant and knew it contained misrepresentations and omissions.  (SAC ¶ 51 and 54).

24  They are responsible because they are part of a conspiracy to frame Carson for the murder of

25  Kauffman.  (SAC ¶ 56).  They were all involved in the investigation and knew it rested solely on

26  the facts as alleged by Robert Woody which they knew were false because they participated in

27  concocting and coercing the false statements.  (SAC ¶ 43-49, 54(c)).  The facts as alleged in the

28  SAC show that Fladager (SAC ¶ 57(a)and(b)), Harris (SAC ¶ 58(a), (b), (j)), Ferreira (SAC ¶

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1   59(a), (b), (g), (k)), Bunch (SAC ¶ 60(a),(b), (c)), Evers (SAC ¶ 62 (b), (c),(f), (h), (i)), and

2   Jacobson (SAC ¶ 61 (a), (c), (d)), participated in regular briefings on the case and were involved

3   in the drafting and approval of the arrest warrant.  Therefore, they would be well-aware of the

4   materiality of the multiple false statements and omissions in the warrant.

5          Defendants argue that Plaintiff's complaint does not allege that the Defendants acted

6   recklessly or with disregard for the truth or whether their false statements and omissions were

7   simply negligent inaccuracies or simple mistakes.  This argument strains credulity as Plaintiff's

8   SAC is riddled with facts alleging that all Defendants were acting intentionally and were

9   motivated to frame Carson due to animus against him.  Moreover, Defendants' state of mind is

10  not something that can be decided in a 12(b)(6) motion. "Materiality is for the court, state of

11  mind is for the jury."  See *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002).  Moreover, [a]

12  plaintiff need not establish that the defendant officers had the intent to mislead the court issuing

13  the warrant, but rather must only show the officers "intentionally or recklessly made false

14  statements or material omissions" to the authorizing magistrate.  *Morse v. County of*

15  *Merced*, (E.D. Cal., July 11, 2017, No. 116CV00142DADSKO) 2017 WL 2958733, at *10 citing

16  *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997).

17         Defendant further argues that Plaintiff fails to allege how these facts were material to the

18  existence of probable cause.  Plaintiff alleges that other likely suspects for the murder were

19  omitted, the complete lack of physical evidence was omitted and the extreme coercion of and

20  fabrication of testimony from the main witness, Robert Woody, was omitted in addition to the

21  plethora of purposefully omitted information in Section II.C., *supra*.  Such facts are material to a

22  finding of probable cause.  (*See Morse, supra,* at p. 12, a case at the summary judgment stage,

23  finding the omission of a lack of physical evidence to support probable cause coupled with

24  omission of or inclusion of misleading witness statements was material to finding of probable

25  cause).

26  ///

27  ///

28  ///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

**2.      Plaintiff states facts supporting a judicial deception claim against Harris, Fladager and Ferreira as supervisors who approved the deceptive warrant.**

Supervisors are liable under section 1983 for:

(1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others. In other words, a supervisor can be held liable in his individual capacity if he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

*Zeen v. Cty. of Sonoma*, No. 17-CV-02056-LB, 2018 WL 2445518, at *10 (N.D. Cal. May 31, 2018) (internal citations omitted).

Here, Plaintiff alleges facts that show that Harris, Fladager and Ferreira were acting as supervisors of Brown, Bunch and Jacobson.  (SAC ¶57-59, 73)  As set forth in detail above, Plaintiff further alleges facts that support  Fladager, Harris and Ferreira's own culpable conduct with respect to their knowledge of and participation in the drafting and submission of the warrant.

Defendant argues that Plaintiff has not alleged facts that show the supervisory Defendants knew the warrant contained false statements or omissions.  Yet these facts are alleged in the paragraphs that allege each of these Defendants participating in the regular briefings on the Carson investigation. (SAC ¶ 57(a), 58(b), 59(a)).  Their participation in the regular briefings, as well as their membership in the conspiracy, are facts that support the knowledge of the falsity of the evidence against Carson.

**D.      Plaintiff States Facts Sufficient to Support a Claim for Malicious Prosecution.**

As a preliminary matter, Defendants have not argued that the malicious prosecution claim against Bunch, Jacobson and Brown should be dismissed.  Defendants argue that Plaintiff's malicious prosecution claim against Defendants Fladager, Harris, and Ferreira fails because Plaintiff did not allege they were "personally involved." However, this is a misstatement of the law.  A malicious prosecution claim requires that the Defendant be "actively involved" in the Plaintiff being arrested and prosecuted or in causing the continuation of the prosecution. (CACI

1   1500.)  To create liability for malicious prosecution, "[t]he person must take some affirmative

2   action to encourage the prosecution by way of **advice** or pressure, as opposed to merely

3   providing information." *Zucchet v. Galardi*, 229 Cal.App.4th 1466, 1485 (2014) (internal quotes

4   omitted)(emphasis added).  Additionally, "[l]iability for malicious prosecution is not limited to

5   one who initiates an action.  A person who did not file a complaint may be liable for malicious

6   prosecution if he or she *instigated* the [proceeding] or *participated* in it at a later time."  *Nunez v.*

7   *Pennisi*, 241 Cal.App.4th 861, 873 (2015)(internal quotes omitted)(emphasis added).

8          Again, as set forth in substantial detail above, Plaintiffs have clearly detailed the active

9   participation of Fladager, Harris and Ferreira as both instigators and participants of Plaintiff's

10  malicious prosecution. (SAC ¶ 57, 58, 59.)  Among other things, the Defendants gave advice to

11  investigators, willfully disregarded scores of exculpatory evidence during the investigatory phase

12  and in drafting and reviewing the arrest warrant, reviewed, edited, and knowingly submitted false

13  and misleading information to the court to secure unfounded arrest warrants – all of which

14  instigated the malicious prosecution.  All three DA Defendants participated in regular briefings.

15  (*Id.*)  Dave Harris personally instigated the investigation in Carson as a confidential "blue star"

16  case that required specialized attention long before any criminal proceedings were initiated.

17  (SAC ¶ 58).   Marlissa Ferreira interviewed witnesses and participated in Woody's fabricated

18  statements. (SAC ¶ 59.)  Fladager personally reviewed and approved the deceptive arrest

19  warrant.  (SAC ¶57b). All of these facts show active participation by the DA Defendants in the

20  malicious prosecution and were acts that were outside their roles as prosecutors and more in line

21  as police investigators and supervisors.

22          **E.      Plaintiff States Facts Sufficient to Support a Claim for Retaliatory**
                        **Prosecution and Retaliatory Arrest.**

23

24          Defendant argues that Plaintiff has not sufficiently pled that he was engaged in protected

25  activity or that such activity was a substantial motivating factor in his prosecution.  Defendant

26  ignores that the crux of this claim is that Defendants were motivated to prosecute him based on

27  his years long criticism of their corruption and dishonesty.  (SAC ¶ 1, 28, 29, 35 and 36).

28  ///

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1      Plaintiff's criticism of law enforcement and the DA's Office in and outside of the

2  courtroom are clearly protected by the First Amendment.  "[T]he First Amendment protects a

3  significant amount of verbal criticism and challenge directed at police officers … and retaliation

4  for this criticism is actionable as a civil rights violation under section 1983."  *Grassilli v. Barr*,

5  142 Cal.App.4th 1260, 1277 (2006) (citing among other federal cases, *Houston v. Hill*, 482 U.S.

6  451, 461 (1987) (quotation marks omitted; alteration in original).

7      In *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008), a case at the summary judgment

8  stage, the Ninth Circuit held that "if a plaintiff can prove that the officials secured his arrest or

9  prosecution without probable cause and were motivated by retaliation against the plaintiff's

10  protected speech, the plaintiff's First Amendment suit can go forward."  *Id.* at 863-64.  "A

11  litigant will lack probable cause for his action either if he relies upon facts which he has no

12  reasonable cause to believe to be true."  *Soukup v. Law Offices of Herbert Hafif,* 39 Cal.4th 260,

13  292 (2006).

14      Carson was an outspoken and unabashed critic of Stanislaus County law enforcement for

15  decades.  He ran for DA against Fladager in 2013, openly criticizing her overuse of wiretaps and

16  accusing her of corrupting the DA's office. (SAC ¶ 4.) The Defendants distain for Carson's

17  exercise of his First Amendment right to criticize law enforcement and expose their corruption is

18  evident in the 2015 arrest warrant affidavit, wherein, Carson's campaign is described as a

19  "contrived and calculated" effort to obstruct law enforcement's inquiry into Kauffman's

20  disappearance.  (SAC ¶ 4).  Further, there was no probable cause for Carson's arrest or his

21  malicious and retaliatory prosecution.  There was never any evidence Korey Kauffman was ever

22  on Carson's property let alone that Carson had any involvement in his murder.  (SAC ¶ 55)

23  Despite ample evidence that gang members and drug dealers were more likely to have killed

24  Kauffman, the Defendants unreasonably proceeded to prosecute Carson for murder.  (SAC ¶ 38).

25      Defendants' argument that Plaintiff has not established supervisory liability is easily

26  dismissed.  Supervisors are liable if they "participated in violating plaintiff's rights, directed

27  others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their

28  subordinates' violations," *Parkell v. Danberg*, 833 F.3d 313, 330–31 (3d Cir. 2016). The

G. WILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1   personal participation does not have to be overt. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

2   Cir. 2013). Plaintiff's SAC alleges each DA actively participated in the investigation, directed

3   investigators to continue investigating Carson without probable cause and with full knowledge of

4   the abusive and coercive tactics that the investigators were using in furtherance of the

5   conspiracy. As such, Defendants' argument that there are no facts alleged as to Plaintiff's

6   protected speech is unavailing and their Motion to Dismiss should be denied.

7          Lastly, Defendant argues that there is no Fourth Amendment right to be free from

8   retaliatory prosecution. Plaintiff's claim is based on a retaliatory arrest. Logically, a retaliatory

9   arrest without probable cause would violate the Fourth Amendment protection against

10  unreasonable seizure. (Police Misconduct: Law and Litigation, November 2021 Update, By

11  Michael Avery, David Rudovsky, Karen M. Blum, and Jennifer Laurin 2:16, "Where an officer

12  attempts to punish a person for the exercise of First Amendment rights by filing a criminal

13  charge against him, there is a potential cause of action under the Fourth and First Amendments.")

**F.      Plaintiff States Facts That Show a Government Abuse of Power That Shocks the Conscience and Violates the Due Process Clause of the Fourteenth Amendment.**

16         "The touchstone of due process is protection of the individual against arbitrary action of

17  government." *County of Sacramento v. Lewis*, 523 U.S. 833 at 845 (1998), citing *Wolff v.*

18  *McDonnell*, 418 U.S. 539, 558 (1974). A due process claim can be based on the deliberate

19  fabrication of evidence or deliberate or reckless suppression of evidence. (See 9th Cir. Model

20  Civil Jury Instructions 9.33 and 9.33A). Plaintiff has pled facts that support liability against the

21  County Defendants on both grounds.

**1.      Defendants deliberately fabricated evidence**

23         "[T]here is a clearly established constitutional due process right not to be subject to

24  criminal charges on the basis of false evidence that was deliberately fabricated by the

25  government." *Caldwell v. City & Cty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018).

26  Deliberate fabrication may be established by showing either that (1) the defendant continued his

27  investigation of the plaintiff even though he knew or should have known that the plaintiff was

28  innocent or (2) the defendant used "investigative techniques that were so coercive and abusive

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1   that they knew or should have known that those techniques would yield false information."

2   *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015).  See 9th Cir. Model Jury Instruction

3   9.33, that Plaintiff can also plead this claim by simply alleging deliberately fabricated evidence

4   was used to prosecute him.

5       Here, Plaintiff's Fourteenth Amendment claims are based on the **three (3) year-long**

6   sham investigation that was entirely unsupported by any physical evidence or credible witness

7   statements and concluded with Carson false arrest.  It is further based on the intentionally

8   fabricated statement by Robert Woody which was the sole basis for the Defendants' malicious

9   prosecution of Frank Carson.

10      Plaintiff has plead facts sufficient to establish each of the Defendants continued to

11  investigate Carson although there was no evidence connecting him to the Kauffman murder.

12  (SAC ¶ 55) Plaintiff has also stated facts to show that Defendants used coercive and abusive

13  tactics such as charging Carson's innocent family members with murder and accessory to murder

14  intending to pressure Carson into falsely confessing/accepting a plea deal and coercing Robert

15  Woody to elicit his false confession.  Further, Defendants Bunch, Jacobson, Evers and Ferreira

16  personally participated in securing the false confession of Robert Woody, the **<u>ONLY</u>** piece of

17  evidence Stanislaus County had that connected Carson to the Kauffman murder. (SAC ¶ 43-50,

18  59i).  Jacobson also prepared false and misleading reports to support Woody's false confession.

19  (SAC ¶ 61(j)).  As detailed above, Plaintiff has also pled facts showing Fladager, Harris and

20  Ferreira supervised this fabrication of evidence.  The panoply of false and fabricated evidence

21  that was used to secure Plaintiffs' arrest, and indeed the arrest of seven other innocent people, is

22  an abuse of government power so shocking that no additional facts are needed to support this

23  claim.

24          **2.      Defendants withheld exculpatory evidence**

25      In addition, police officers may be liable in a section 1983 action if he fails to apprise the

26  prosecutor or a judicial officer of known exculpatory information.  *Tatum v. Moody*, 768 F.3d

27  806, 818 (9th Cir. 2014).  Here, it is alleged that Bunch, Jacobson, Evers and Brown withheld

28  materially exculpatory evidence from prosecutors and the defense.  (SAC ¶ 101).

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

Defendants argue that the evidence withheld until 10 months into the preliminary hearing is not material to innocence and did not cause Frank Carson's incarceration.  Plaintiffs submit the materiality of the exculpatory evidence challenged by the defendants is self-evident: a 2014 polygraph test given to Robert Woody, the State's star witness, showed he was being *truthful* *when he denied any involvement in the Kauffman murder* – a fact that eviscerated the prosecution theory; and video footage of David McMillian and Jason Armstrong (Hell's Angels gang members) captured at the site where Kauffman's remains were discovered – before this location was known to the public.  (SAC ¶ 38(c)-(d); 50). This evidence showed that Woody had no involvement and was highly exculpatory in showing that McMillan and Armstrong, who had no ties to Carson, were very likely involved in Kauffman's disappearance.

Frank Carson spent seventeen (17) months in jail until he was released in 2016 based on the failure of Defendants to disclose this very evidence. According to trial transcripts, the withholding of evidence in this case was so severe, the presiding judge stated she had to release Carson on his own recognizance to "save" the case for the prosecution.

Defendants motion to dismiss this claim should be denied.

**G.    Plaintiff States Facts Sufficient to Allege a *Monell* Claim.**

Defendants argue that Plaintiff has not alleged any policy of the DA's office or conduct by its policymakers sufficient to state a *Monell* claim.  Plaintiff alleges that the supervisory conduct by Fladager, Harris and Ferreira that includes their membership in the conspiracy to fabricate evidence against Carson, their ratification of unconstitutional coercive fabrication of evidence, and their approval of an arrest warrant they knew was false and fabricated all for the purposes of destroying their outspoken adversary was unconstitutional conduct condoned and ratified by official policymakers of Stanislaus County.  Decisions by a policymaker with final authority subjects the municipality to liability, even if the policy in question is inconsistent with existing policies.  *Gonzalez v. Ysleta Independent School Dist.*, 996 F.2d 745, 84 Ed. Law Rep. 59 (5th Cir. 1993).  Further, a final policymaker might delegate her authority to another, rendering that other individual the final policymaker when exercising the delegated authority.  A single act of a municipality's policymakers can generate section 1983 liability against the

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

1   municipality.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Municipality liability

2   under section 1983 attaches where "a **deliberate choice** to follow a course of action is made

3   from among various alternatives by the official or officials responsible for establishing final

4   policy with respect to the subject matter in question."  *Id.* at 483.

5          Here, as the elected District Attorney of Stanislaus County Birgit Fladager had final

6   policymaking authority for Stanislaus County.  As her Chief Deputy, so did David Harris.[5]  The

7   SAC alleges that Ferreira took over for Harris in 2015 when he delegated his final policy making

8   authority to her and that Ferreira delegated her final policy making authority to Defendant Bunch

9   in a 2017 email. (SAC 59; 81). The DA Defendants were intimately involved in the investigation

10  and participated in approved of their subordinates' unconstitutional acts in furtherance of the

11  conspiracy against Carson that resulted in his death.  Moreover, the failure to train and supervise

12  their subordinates with regard to the Carson investigation, and their failure to discipline them as

13  alleged in SAC ¶ 20 supports *Monell* liability.

14         For this reason, Stanislaus County is liable for the decisions of its policymakers and

15  Defendants' motion to dismiss this claim should be denied.

16         **H.     Plaintiff Has Adequately Pled Constitutional Violations That Support a
                    Claim Based on Civil Code section 52.1 and Defendants Fladager, Harris,**
17         **and Ferreira Are Not Entitled to Government Code section 820.8 Immunity.[6]**

18         Defendants argue this claim fails because Plaintiff has not pled specific intent to deprive

19  Plaintiff of his rights or direct involvement of the DA Defendants.

20         An arrestee's right to be free from arrest without probable cause is a clearly delineated

21  and plainly applicable right capable of supporting a Bane Act violation.  *Cornell v. City &*

22  *County of San Francisco* (App. 1 Dist. 2017) 225 Cal.Rptr.3d 356, as modified, review denied.

23  "[A] participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest

24  lacked any constitutional basis and yet participated in some way."  *Wilkerson v. Seymour*, 736

25

26  [5] As argued in IV.B.1, under *Monell,* when District Attorneys act as final policymakers, they are
    not state actors but local policymakers.  *See Goldstein*, *supra*, 715 F.3d. at 759-60 (9th Cir. 2013),
27  *cert. denied sub nom. Cnty. of L.A. v. Goldstein*, 134 S. Ct. 906 (2014).
    [6] It is again noted that Defendants concede that Plaintiffs state a claim against Bunch, Jacobson,
28  and Brown for Bane Act violations.

GWILLIAM IVARY CHIOSSO CAVALLI & BREWER
ATTORNEYS AT LAW
A Professional Corporation
1999 Harrison St., Suite 1600, Oakland, CA 94612

F.3d 974, 980 (11th Cir. 2013).  Courts have found liability even if the Defendant was not present for the moment of arrest.  *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018), overruled on other grounds by, *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019).  Moreover, a public officer is not shielded by section 820.8 for the negligent act of a subordinate by acquiescence therein, ratification, and co-operation. *Wolfsen v. Wheeler,* 130 Cal.App. 475, 482 (1933).

Here, all of the Defendants, including the DA Defendants, were part of a conspiracy to violate Carson's constitutional rights Fladager, Harris and Ferreira were directly involved in the arrest and investigation and the fabrication of evidence as alleged in the SAC.  (SAC ¶ 56-59). Defendants' specific intent is evidenced by their continued investigation of Carson in the face of **no evidence** he was involved in the Kauffman murder. There was no blood, hair, clothing fibers, fingerprints, spit, sweat, or any such thing found on Mr. Carson's property where the Defendants claimed the murder occurred.  (SAC ¶ 54(m)).  There was no evidence that Kaufmann was ever on Frank Carson's property, that Kaufmann ever stole anything from Carson, or that Carson had any intent or motive to kill Kaufmann.  (*Id.*)  There was no probable cause to believe Carson had committed any crime and Defendants knew it. In their roles as supervisors, the DA Defendants acquiesced, ratified, and cooperated with the investigator's unconstitutional acts.

As such, Plaintiff has stated a claim for Bane Act violations and the DA Defendants are not immune under Government Code section 820.8.

## V.   <u>CONCLUSION</u>

For all of the reasons above, Plaintiffs respectfully request that the Court deny the Defendants' motion to dismiss.

DATE: April 11, 2022

GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER

/s/ *Angelina M. Austin*

J. Gary Gwilliam
Randall E. Strauss
Jayme L. Walker
Angelina M. Austin
Attorneys for Plaintiffs
ESTATE OF FRANK CARSON AND GEORGIA
DEFILIPPO