1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ESTATE OF FRANK CARSON AND            No.  1:20-cv-00747-DJC-BAM
     GEORGIA DEFILIPPO, et al.,
12
                    Plaintiffs,
13                                          ORDER
              v.
14
     COUNTY OF STANISLAUS, et al.,
15
                    Defendants.
16

17          This action concerns Frank Carson's arrest and prosecution by Defendants in

18   connection with the alleged murder of Korey Kauffman.  Plaintiffs raise a number of

19   claims pursuant to 42 U.S.C. § 1983 and California state law based on their arrest and

20   the investigation that preceded it.  Presently before the Court is Defendants' motion to

21   dismiss some of the claims raised in the Second Amended Complaint.  (Defs.' Mot.

22   (ECF No. 71).)  For the reasons stated below, Defendants' Motion to Dismiss is

23   GRANTED IN PART and DENIED IN PART.

24      **I.      Background**

25          Plaintiffs are the Estate of criminal defense attorney Frank Carson and Carson's

26   Wife, Georgia DeFilippo, in her status as an individual and as a successor in interest to

27   Carson.  Carson was arrested in 2015 on suspicion that he was involved in a murder

28   for hire scheme that resulted in the murder of Korey Kauffman.  Carson was held for

                                             1

1  seventeen months and was eventually acquitted by a jury.  Plaintiffs claim that the

2  arrest of Carson was the result of a conspiracy to retaliate against Carson for his

3  actions as a defense attorney.   Plaintiffs have filed the present suit against both

4  county and city Defendants based on the alleged violations of Plaintiffs' federal civil

5  rights as well as violations of California state law.

6        The Court previously partially granted Defendants' Motion to Dismiss and

7  dismissed Plaintiffs' complaint with leave to amend.  After Plaintiffs submitted a

8  Second Amended Complaint ("SAC"), Defendants filed the present Motion to

9  Dismiss.[1]

10  **II.**      **Legal Standard on Motion to Dismiss**

11        A party may move to dismiss for "failure to state a claim upon which relief can

12  be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint

13  lacks a cognizable legal theory or if there are insufficient facts alleged under a

14  cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th

15  Cir. 2019).  The Court assumes all factual allegations are true and construes them in

16  the light most favorable to the nonmoving party.  *Steinle v. City & Cnty. of San*

17  *Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  A complaint must plead "sufficient

18  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

19  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

20  550 U.S. 544, 570 (2007).  However, the Court must "draw all reasonable inferences in

21  favor of the nonmoving party."  *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners*

22  *of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

23  *////*

24  *////*

25

---

26  [1] The present order is one of three issued simultaneously by the Court in related cases with similar
pending motions to dismiss.  *See DeFilippo v. County of Stanislaus*, No. 1:18-cv-00496-DJC-BAM;

27  *Quintanar v. County of Stanislaus*, No. 1:18-cv-01403-DJC-BAM.  Broadly speaking, these cases relate
to the same series of events.  Accordingly, the analysis in each of the Court's three orders is largely

28  identical, except where otherwise noted.

1      **III.     Allegations in the Complaint**

2             In the Second Amended Complaint, Plaintiffs include dozens of pages of

3      detailed factual allegations which can be summarized as follows:

4             Attorney Frank Carson was arrested on August 14, 2015, and charged with the

5      murder of Korey Kauffman.  (SAC at 3.)  Carson was "reviled by many in law

6      enforcement" as well as the Stanislaus County District Attorney's office ("SCDA").  (*Id.*

7      at 9.)  The murder for hire theory was based in part on the idea that Kauffman was

8      suspected of a prior theft from Carson's property and that Carson had hired

9      individuals to murder Kauffman.  (*Id.* at 2, 8–9.)  On April 4, 2012, shortly after

10     Kauffman's disappearance, Defendant Kirk Bunch filed a report about a conversation

11     with Michael Cooley, Carson's neighbor and purportedly the last person to see

12     Kauffman alive.  (*Id.* at 9.)  In Defendant Bunch's report, Cooley "sought to implicate

13     Carson in Kauffman's disappearance and subsequent murder . . . ."  (*Id.*)  After

14     prosecutors learned of the potential link between Carson and Kauffman's

15     disappearance, the SCDA "[s]uddenly . . . became very interested in this missing

16     person case."  (*Id.* at 10.)

17            Defendants Harris and Birgit Fladager created a task force to investigate

18     Kauffman's disappearance.  (*Id.*)  Defendant Fladager supervised the investigation

19     team which included Defendants Bunch, Jacobson, Cory Brown, and Jon Evers.  (*Id.* at

20     11.)  Defendant Harris was also originally responsible for supervising these

21     Defendants but was later replaced by Defendant Marlissa Ferreira after Defendant

22     Harris "was accused of jury tampering and contempt of court in a case he had with

23     Carson as [opposing] counsel."  (*Id.*)

24            During the course of the investigation, multiple other viable suspects were

25     disregarded and exculpatory evidence was not disclosed to the judge who signed

26     Plaintiffs' arrest warrants.  (*Id.* at 11–15.)  As part of the investigation, Defendants

27     Bunch, Jacobson, and Evers conducted a seven-hour interrogation of Robert Woody

28     after he was recorded saying he had killed Kauffman.  (*Id.* at 16–17.)  Defendants

3

1    Bunch, Jacobson, and Evers informed Woody of the theory involving Carson and

2    Plaintiffs and pressured Woody despite him repeatedly denying "any involvement in,

3    or knowledge of, the Kauffman murder . . . ." (*Id.* at 17.)  Woody was threatened with

4    the death penalty and life in prison, and told he had an opportunity to implicate

5    others in the murder. (*Id.*)  During the interrogation, Woody took a 20-minute

6    bathroom break, accompanied by Defendants Bunch and Jacobson. (*Id.* at 17–18.)

7    This period was not recorded and when Woody returned, he repeated back part of

8    the theory that Bunch, Jacobson, and Evers had told him previously: "that [Woody's]

9    employers, Baljit Athwal and Daljit Athwal had murdered Kauffman and that they did it

10   because they were asked by Carson to watch over his property for thieves." (*Id.* at 18.)

11   Defendants Bunch, Jacobson, and Evers conducted several additional interviews with

12   Woody over the next two years during which they reinforced what Woody had told

13   them. (*Id.* at 19–24.)  Woody eventually recanted his confession on April 24, 2014, and

14   passed a polygraph stating that he had nothing to do with Kauffman's murder. (*Id.* at

15   23–24.)

16        On August 13, 2015, Defendant Brown submitted a Ramey Warrant for

17   Plaintiffs' arrest. (*Id.* at 23.)  The preparation of this warrant request was "a 'group

18   consensus' between [Defendant Brown] and Defendants Fladager, Ferreira, Bunch,

19   Evers, and Jacobson on what charges to seek and what facts to include (and exclude)

20   in the warrant." (*Id.*)  The ultimate warrant was a 325-page "unorganized, rambling

21   document" that failed to establish probable cause. (*Id.* at 24.)  The arrest warrant also

22   contained a number of "fabrications, material omissions[,] and misleading

23   statements." (*Id.* at 25–28.)

24        After his arrest, Carson served seventeen months in jail where his health

25   deteriorated due to jail conditions which later resulted in the closure of the jail. (*Id.* at

26   45.)  At trial, Carson was acquitted of all charges by a jury after less than two days of

27   deliberation. (*Id.* at 44.)  Despite the acquittal, some of the Defendants continued to

28   accuse Carson of involvement in the murder. (*Id.*)

1    **IV.    Defendants' Motion to Dismiss**

2        **A. Claims That Plaintiffs Concede Should be Dismissed**

3            As an initial matter, in response to Defendants' motion, Plaintiffs concede two

4    categories of claims should be dismissed.

5            First, Defendants argue that Plaintiffs improperly brought suit against

6    Defendants Fladager and Harris in their official capacity as the Court previously

7    dismissed these claims as redundant to Plaintiffs' claims against Stanislaus County.

8    (Defs.' Mot. at 3.)  In their opposition, Plaintiffs concede that these official capacity

9    claims are redundant and voluntarily dismiss them.  (Pls.' Opp'n (ECF No. 79) at 4.)

10   Accordingly, claims against Fladager and  Harris in their official capacities are

11   dismissed.

12           Second, Defendants argue in their motion that Defendants Fladager and Harris

13   are not proper parties to a *Monell* municipal liability claim.  (Defs.' Mot. at 15.)  In their

14   opposition, Plaintiffs also concede this point and voluntarily dismiss the claims against

15   Fladager and Harris based on municipal liability.  (Pls.' Opp'n at 4.)  Accordingly, these

16   claims are also dismissed.

17       **B. Timeliness of Plaintiffs' Judicial Deception and False Imprisonment and**

18           **False Arrest Claims against Defendants Fladager, Harris, and Ferreira**

19           In their motion, Defendants argue that two sets of claims are not timely under

20   the requisite statute of limitations: Plaintiffs' Fourth Amendment judicial deception

21   claims against Defendants Fladager, Harris, and Ferreira; and Plaintiffs' false arrest and

22   false imprisonment claims against these same Defendants.  Plaintiffs initially contend

23   that their claims are timely under the *Heck* rule for accrual.  To the extent that these

24   claims are not timely and/or the *Heck* rule does not apply, Plaintiffs argue that

25   statutory and equitable tolling apply instead.  The Court will first determine the date

26   each set of claims was accrued and then determine whether are subject to tolling.

27   ////

28   ////

1      **1. Accrual of Claims**

2         **a. Fourth Amendment Judicial Deception Claims**

3         Turning first to Plaintiffs' Fourth Amendment judicial deception claims, as these

4    claims are brought pursuant to section 1983, the Court must apply the statute of

5    limitations for personal injury of the state in which the claim arose. *Alameda Books,*

6    *Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011)  In California, there is a

7    two-year statute of limitations for personal injury actions. *See* Cal. Civ. Proc. Code

8    § 335.1.  Plaintiffs do not dispute that this is the proper statute of limitations but

9    instead contend that these claims are timely under the *Heck* rule, as well as being

10   subject to statutory and equitable tolling.  (Pls.' Opp'n at 4–8.)

11        Pursuant to the rule expressed by the Supreme Court in *Heck v. Humphrey*, 512

12   U.S. 477 (1994), individuals are not permitted to recover damages via section 1983

13   "for [an] allegedly unconstitutional conviction or imprisonment, or for other harm

14   caused by actions whose unlawfulness would render a conviction or sentence invalid"

15   unless the plaintiff proved that "that the conviction or sentence has been reversed on

16   direct appeal, expunged by executive order, declared invalid by a state tribunal

17   authorized to make such determination, or called into question by a federal court's

18   issuance of a writ of habeas corpus . . . ." *Id.* at 486–87.  Where there are ongoing

19   state court proceedings, the resolution of which are required to satisfy the *Heck* rule,

20   the Supreme Court has held that the cause of action "accrues only once the

21   underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough v.*

22   *Smith*, 139 S. Ct. 2149, 2156 (2019).  However, accrual occurs "when the plaintiff has a

23   complete and present cause of action, that is, when the plaintiff can file suit and obtain

24   relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations omitted).  To determine

25   whether a plaintiff has a complete and present cause of action, the Court must look to

26   the analogous common law tort to determine when the cause of action accrued. *Id.*

27        While most Fourth Amendment violations accrue when "the wrongful act

28   occurs," *Belanus v. Clark*, 796 F.3d 1021, 1026 (9th Cir. 2015), the Ninth Circuit has

1   clarified that "judicial deception" claims accrue differently owing to the need for the

2   party to be able to view the affidavit supporting a warrant before pursuing an action

3   on these grounds. *Klien v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017).

4   As such, the Court is required to apply the discovery rule which "requires that judicial

5   deception claims begin accruing when the underlying affidavit is reasonably

6   available." *Id.*

7        Here, accrual of Plaintiffs' deception claims would be at the point that the

8   affidavit underlying the warrant for Plaintiffs' arrest was available.  Both parties agree

9   that this occurred in 2015.[2]  (Defs.' Mot. at 4; Pls.' Opp'n at 4 n.2.)  As Plaintiffs' judicial

10  deception claims would have accrued at this point, Plaintiffs' claims are not saved by

11  the *Heck* rule as Plaintiffs did not file the present action until May 28, 2020.  Thus,

12  unless Plaintiffs' judicial deception claims against Defendants Fladager, Harris, and

13  Ferreira are tolled, they are not timely.

14             **b.  False Arrest/Imprisonment Claim**

15       Turning next to Plaintiffs' sixth cause of action for false arrest and false

16  imprisonment, this claim was brought under California Government Code sections

17  820, 820.4, and 815.2, not section 1983.  As such, it is subject to the rules for accrual

18  for the cause of action under state law. *See Jones v. City of Los Angeles*, No. 05-cv-

19  01778-DSF, 2006 WL 8434718, at *8–9 (C.D. Cal. Jan. 5, 2006).

20       Under California law, false arrest and imprisonment claims are subject to a one-

21  year statute of limitations.[3]  Cal. Civ. Proc. Code § 340; *Bulfer v. Dobbins*, No. 09-cv-

22  1250-JLS-POR, 2011 WL 530039, at *13–14 (S.D. Cal. Feb. 7, 2011) ("Plaintiff's false

23  arrest claim is barred by the one-year statute of limitations applicable to false

24

25  [2] Plaintiffs attempt to introduce some ambiguity as to when the arrest warrant was available, suggesting in their Opposition that "it *may* have become reasonably available to Plaintiffs sometime after October

26  2015." (Opp. at 4, n. 2 (emphasis in original).)  That ambiguity, however, is inconsistent with the allegation in the operative complaint that the entire warrant was released online following the press conference announcing the charges.  (SAC at ¶ 57.)

27  [3] As these are claims against government employees, they are also subject to the limitations of the California Tort Claims Act in addition to the statute of limitations.  Compliance with the California Tort

28  Claims Act as to these claims is addressed separately below.

7

1   imprisonment claims."); *see Milliken v. City of South Pasadena*, 96 Cal. App. 3d 834,

2   840 (1979) (stating false arrest and imprisonment are subject to a one-year statute of

3   limitations pursuant to section 340).  Though a false arrest and imprisonment claim

4   may arise at the time of arrest, in California "the statute of limitations [does] not

5   commence to run until [plaintiff's] discharge from jail." *Milliken*, 96 Cal. App. 3d at

6   840.

7        Under these rules, Plaintiffs' false arrest and imprisonment claims would have

8   begun to run on the date Carson was released from custody.  While it is unclear from

9   the pleadings the exact date Carson was released from custody,  Plaintiffs have

10   alleged that it was during preliminary proceedings.  (SAC at ¶ 9.)  Plaintiffs also state

11   that Carson's jury trial "lasted more than a year" and ended on June 18, 2019.  (*Id.* at

12   ¶ 10.)  Taking Plaintiffs' allegations as true this means that Carson's trial was already

13   underway a year prior on June 18, 2018, and Carson had been released by that time.[4]

14   As such, this action was filed beyond the one-year statute of limitations for these sorts

15   of claims.  The *Heck* accrual rules are also inapplicable to these claims as *Heck* is

16   specific to actions brought under section 1983.  *See Heck*, 512 U.S. at 486–87; *see*

17   *also Jones v. City of Los Angeles*, No. 05-cv-1778-DSF, 2006 WL 8434718, at *8 (C.D.

18   Cal. Jan. 5, 2006) (distinguishing California state law false arrest claims from section

19   1983 claims).

20        Accordingly, Plaintiffs' false arrest/imprisonment claims against Defendants

21   Fladager, Harris, and Ferreira are untimely unless statutory or equitable tolling is

22   applicable.

23        **2.  Statutory Tolling**

24        Plaintiffs argue that their judicial deception claims as well as their false arrest

25   and imprisonment claims should also be subject to statutory tolling under California

26

27   [4] Statements in Plaintiffs' opposition appear to indicate that Carson was released even earlier on December 22, 2016.  (*See* Pls.' Opp'n at 10.)  However, this is not clearly stated nor is it included as a factual allegation in Plaintiffs' complaint.  Regardless, the Court does not need to reach this issue as

28   these claims are untimely under either date.

Government Code section 945.3. (Pls.' Opp'n at 5–6.) Defendants contend that this statute is not applicable to Defendants Fladager, Harris, and Ferreira as they are not "peace officers" within the meaning of this statute. (Defs.' Reply (ECF No. 81) at 3.)

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Section 945.3 provides that a defendant in a criminal action may not bring a civil suit "against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged . . . . while the charges against the accused are pending before a superior court." Cal. Gov't Code § 945.3. Section 945.3 further tolls these civil claims "during the period that the charges are pending." *Id.* Whether this statute properly applies to Defendants Fladager, Harris, and Ferreira depends on whether these defendants, who are all employed as attorneys by the SCDA (SAC at ¶ 23), are properly considered "peace officers" under section 945.3. Defendants suggest that this Court apply the definition of "peace officer" found within California Penal Code section 830.1(a). (Defs.' Reply at 3.) Plaintiffs argue that the definition provided by Penal Code section 830.1(a) is not meant to apply to Government Code section 945.3 as the latter statute makes no reference to Penal Code section 830.1(a). (Pls.' Opp'n at 6–7.) Plaintiff also opposes on the grounds that, within the "plain meaning" of section 945.3, Defendants Fladager, Harris, and Ferreira are peace officers, regardless of the "literal language" of the statute. (*Id.* at 5–6.)

Other courts in this district have previously declined to apply section 954.3 to one of these three Defendants, Defendant Fladager, based on the same conduct on the grounds that "[p]rosecutors are not considered 'peace officers' under state law." *Athwal v. Cnty. of Stanislaus*, No. 1:15-cv-00311-TLN-BAM, 2022 WL 4237713, at *4 (E.D. Cal. Sep. 14, 2022); *see also Wells v. Cnty. of Stanislaus*, 1:20-cv-00770-TLN-

9

1   BAM, 2022 WL 4237538, at *4.  The Court reaches a similar conclusion here.  Courts

2   have consistently looked to section 830.1(a) when determining whether an individual

3   is a peace officer for the purposes of applying section 945.3.  *See Pontillo v. Stanislaus*

4   *Cnty.*, 1:16-cv-01834-DAD-SKO, 2017 WL 3394126, at *5 (E.D. Cal. Aug. 8, 2017);

5   *Webster v. Cnty. of Los Angeles*, No. 12-cv-656-ODW-MRW, 2012 WL 2071781, at *2

6   (C.D. Cal. June 6, 2012) *report and recommendations adopted by* 2012 WL 2071765

7   (C.D. Cal. June 7, 2012); *Kelley v. Allen*, 2:10-cv-00557-GEB-DAD, 2011 WL 5102994,

8   at *2 (E.D. Cal. Oct. 26, 2011).  Section 830.1(a) does not designate an attorney

9   employed in the office of a district attorney as a peace officer.  Cal. Pen. Code

10  § 830.1(a); *See Athwal*, 2022 WL 4237713, at *4; *Wells*, 2022 WL 4237538, at *4.

11  Additionally, though section 830.1(a) does provide that investigators for a district

12  attorney's office are peace officers, this only applies to "an inspector or investigator

13  *employed in that capacity*" by the office.  Neither party contends that Defendants

14  Fladager, Harris, and Ferreira were employed as investigators and, though Plaintiffs

15  have claimed that these defendants were *acting* as investigators, section 830.1(a)

16  plainly only identifies as a peace officer those officially *employed* as an investigator by

17  a district attorney's office.

18       Plaintiffs suggest that this Court should consider Defendants Fladager, Harris,

19  and Ferreira to be peace officers as failing to do so would defeat the plain purpose of

20  section 945.3.  (Pls' Opp'n at 6-7.)  In support of this contention, Plaintiffs rely on *Cross*

21  *v. City and Cnty. of San Francisco*, 386 F. Supp. 3d 1132 (Cal. N.D. 2019).  The court in

22  *Cross* determined that they needed to go beyond the plain meaning of section 945.3

23  in order to properly apply the statute in line with its purpose.  *Id.* at 1143–44.  The

24  concern in *Cross* was with the term "superior court" and whether it should be read as a

25  reference to any trial court, regardless of the name of the court.  *Id.* at 1144–45.  In

26  reaching its decision, the Court relied heavily on the legislative history of

27  section 945.3, which clearly showed that the California legislature intended the statute

28  to apply to criminal actions in any trial court.  *Id.* at 1144–45.

By contrast, Plaintiffs here have not provided any evidence that the current definition of a peace officer does not align with the California legislature's intent. Moreover, unlike the term "superior court", there does appear to be any sort of ambiguity regarding how "peace officer" is to be defined under California law. Section 830.1 provides a detailed list of individuals to be considered peace officers and, as noted by Plaintiffs, the California legislature has not hesitated to update this list to cover the exact individuals they wish to be covered.  (*See* Pls.' Opp'n at 7 (listing various changes to the individuals covered by section 830.1).)  Other sub-sections of the California Penal Code even expressly differentiate between peace officers as defined by Section 830.1 and "[an] attorney employed by . . . a county office of a district attorney . . . ."  Cal. Pen. Code § 832.9.  There is no indication that Defendants Fladager, Harris, and Ferreira should properly be considered peace officers for purposes of section 945.3.  For this Court to make this decision would be to override what appears the California Legislature's clear decisions about who is, and is not, a peace officer under California law.

Accordingly, statutory tolling under California Government Code section 954.3 does not apply to Plaintiffs' claims against Defendants Fladager, Harris, and Ferreira as those Defendants are not peace officers within the meaning of California law.

### 3. Equitable Tolling

Plaintiffs argue in the alternative that equitable tolling should apply to Plaintiffs' claims of false imprisonment/arrest and judicial deception against Defendants Fladager, Harris, and Ferreira.  (Pls.' Opp'n at 7–9.)

As noted above, in section 1983 actions, the Court applies the forum state's statute of limitations for personal injury actions, including the state's equitable tolling law so long as it is consistent with federal law.  *Jones*, 393 F.3d at 927.  Equitable tolling is applied by California courts where it is necessary "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice."  *Id.* at 928 (citations omitted) (citing *Lantzy v. Centex Homes*, 31 Cal. 4th

11

363 (2003)).  "Under California law, a plaintiff must meet three conditions to equitably

toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2)

defendant must not be prejudiced by being required to defend the otherwise barred

claim; and (3) plaintiff's conduct must have been reasonable and in good faith."  *Fink*

*v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (citation omitted).

Despite Plaintiffs' arguments to the contrary, this claim fails at the first

requirement.  Relying on *McDonald v. Antelope Valley Community College District*, 45

Cal. 4th 88 (2008), Plaintiffs argue that Defendants were given adequate notice of the

claim and are not prejudiced by defending the claim here since the Defendants were

"involved in the investigation and the events leading to the initiation of the criminal

proceeding." (Pls.' Opp'n at 7–8.)  In *McDonald*, the California Supreme Court held

that a claim under the state's Fair Employment and Housing Act was equitably tolled

while the plaintiff voluntarily pursued an internal administrative procedure.  *Id.* at 96.

The Court observed that the "filing of an administrative claim, whether mandated or

not, affords a defendant notice of the claims against it so that it may gather and

preserve evidence, and thereby satisfies the principal policy behind the statute of

limitations." *Id.* at 102.

The equitable tolling identified in *McDonald* does not apply here.  *McDonald*

considered several circumstances where this type of equitable tolling might apply:

"where one action stands to lessen the harm that is the subject of a potential second

action; where administrative remedies must be exhausted before a second action can

proceed; or where a first action, embarked upon in good faith, is found to be

defective for some reason." *Id.* at 100.  None of these factors are present here.

Carson was the subject of the underlying criminal action; it did not involve Carson or

Plaintiffs themselves pursuing one of several legal remedies.  *Compare id.* ("Broadly

speaking, the doctrine applies when an injured person has several legal remedies

and, reasonably and in good faith, pursues one.") (internal citations and quotations

omitted).  Plaintiffs point to no case applying equitable tolling to a second suit where

12

1  the first suit involved a criminal complaint against defendants who were plaintiffs in a
2  later civil suit.

3        Even if the doctrine theoretically applied, the other requirements for equitable
4  tolling are not met in this case.  Plaintiffs suggest that Defendants had timely notice of
5  the claims in this case as they were "all intimately involved in the investigation and the
6  events leading to the initiation of the criminal proceeding."  (Pls.' Opp'n at 8.)
7  Defendants' involvement in the criminal action against Carson holds no bearing on
8  whether they were put on notice of Plaintiffs' claims.  The claims present in the first
9  case were criminal charges against Carson; nothing about this prior action or the
10  claims involved would put Defendants on notice of the claims brought here.  This is
11  not a situation "where a defendant in the second claim was alerted to the need to
12  gather and preserve evidence by the first claim even if not nominally a party to that
13  initial proceeding."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 n.3 (9th Cir.
14  1993).  As such, equitable tolling is not applicable to Carson's criminal proceedings as
15  Defendants Fladager, Harris, and Ferreira were not given timely notice of Plaintiffs'
16  claims in those proceedings.  *See Fink*, 192 F.3d at 916.

17        Given the above, Defendants' motion to dismiss as untimely Plaintiffs' Fourth
18  Amendment Judicial Deception claims as well as Plaintiffs' false imprisonment and
19  arrest claims as to Defendants Fladager, Harris, and Ferreira is granted.

20        **C.  Failure to Comply with the California Tort Claims Act**

21        Defendants also argue that Plaintiffs' false arrest and false imprisonment claims
22  are barred by a failure to comply with the California Tort Claims Act ("CTCA").  Parties
23  bringing a suit for monetary damages against a public entity under California law must
24  first comply with CTCA which requires "the timely presentation of a written claim and
25  the rejection of the claim in whole or in part."  *Mangold v. California Pub. Utilities*
26  *Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see Creighton v. City of Livingston*, 628
27  F. Supp. 2d 1199, 1225 (E.D. Cal. 2009).  Failure to comply with the CTCA bars a party
28  from bringing the relevant state law claims.  *Creighton*, 628 F. Supp. 2d at 1225.  The

13

1   complaint need not only plead compliance with the CTCA but also "allege facts

2   demonstrating or excusing compliance with the claim presentation requirement.

3   Otherwise, his complaint ... fail[s] to state facts sufficient to constitute a cause of

4   action." *Id.* (citations omitted).  Personal injury claims are required to be presented

5   within six months of the accrual of the cause of action.  Cal. Gov't Code § 911.2.

6        Plaintiffs' false arrest and imprisonment claims against Defendants Fladager,

7   Harris, and Ferreira accrued at the time Carson was released from jail.  *Milliken*, 96

8   Cal. App. 3d at 840.  As noted above, the exact date when Carson was released is not

9   stated but, taking Plaintiffs' allegations as true, the latest date it could have occurred

10   was June 18, 2018.  Plaintiffs state that they filed claims, in compliance with section

11   911.2, on December 20, 2019.  (SAC at ¶ 15.)  This is more than six months after

12   Plaintiffs' claims accrued upon their release from county jail in mid-2018.

13        Plaintiffs also raise two unique counterarguments not included in the related

14   cases with motions to dismiss.  First, Plaintiffs in the present action argue that their

15   claims should be timely based on the continuing violations doctrine.  (Pls.' Opp'n at 9–

16   11.)  Plaintiffs contend that Defendants' actions from the investigation through until

17   Carson's acquittal consisted of a series of related unconstitutional conduct and that

18   this was connected to the County's policy.  (*Id.* at 10.)  Plaintiffs' arguments relate to

19   the "serial acts branch" of the continuing violations doctrine where an earlier act is

20   considered timely so long as it is part of a series of acts of which at least one is timely.

21   *Bird v. Dept. of Hum. Serv.*, 935 F.3d 738, 747 (9th Cir. 2019).  In essence, Plaintiffs

22   argue that the false timeliness of the false arrest and imprisonment should be based

23   on the timeliness of Plaintiffs' other claims as they are part of a series of

24   unconstitutional acts.  The Supreme Court has rejected the usage of the serial acts

25   branch to circumvent timeliness issues for discrete acts.  *Nat'l R.R. Passenger Corp. v.*

26   *Morgan*, 536 U.S. 101, 114 (2002).  The Ninth Circuit has found that this rule applies to

27   section 1983 claims.  *Bird*, 935 F.3d at 747 (noting that after *Morgan,* "little remains of

28   the continuing violations doctrine").  Accordingly, Plaintiffs cannot rely on the later

14

1    alleged malicious prosecution of Carson to maintain the timeliness of their earlier false

2    arrest and false imprisonment claims.  Plaintiffs also passingly claim that the

3    continuing violation was the result of "the County's policy and custom to violate the

4    constitutional rights of its citizens" which appears to be an attempt to reach towards

5    the systematic brand of the continuing violations doctrine.  (Pls.' Opp'n at 11.)

6    However, the conclusory claim that Plaintiff's constitutional rights were violated as a

7    result of County policy and practice, raised only briefly in Plaintiffs' opposition, is

8    insufficient without any additional factual allegations.  And in any event, the Ninth

9    Circuit has applied the Supreme Court's decision in *Morgan* "to abrogate the

10    systematic branch of the continuing violations doctrine as well." *Bird*, 935 F.3d at 747.

11        Plaintiffs also argue that Defendants should be equitably estopped from

12    asserting Plaintiffs' non-compliance with the CTCA.  (Pls.' Opp'n at 9–12.)  In support of

13    this, Plaintiffs rely on the four-factor test described in *J.M. v. Huntington Beach Union*

14    *High School Dist.*, 2 Cal.5th 648, 656 (2017).  However, they only address a portion of

15    these factors and conclude by simply arguing that "[g]iven the totality of the

16    circumstances, a reasonably prudent person in Carson's position would not have filed

17    a claim against the government entity that was actively prosecuting him with no

18    evidence of criminality out of fear that this act would also be used against him."  (Pls.'

19    Opp'n at 12.)  In determining whether equitable estoppel should apply to a claim

20    under the CTCA, Plaintiff is required to plead and prove that: "(1) The party to be

21    estopped must know the facts; (2) he must intend that his conduct shall be acted on or

22    must so act that the party asserting the estoppel has a right to believe it is so

23    intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the

24    former's conduct to his injury." *Head v. Cnty. of Sacramento*, No. 2:19-cv-1663-TLN-

25    KJN, 2021 WL 2267669, at *3–4 (E.D. Cal. June 3, 2021) (citing *Watkins v. U.S. Army*,

26    875 F.2d 699, 709 (9th Cir. 1989)).  Plaintiffs' opposition and the pleadings in the

27    ////

28    ////

1    complaint fail to establish either of the second two factors.[5]  Plaintiff bears the burden

2    of proving that these factors are satisfied.  *Id.*  As Plaintiff has failed to do so, the Court

3    will not apply equitable estoppel to remedy Plaintiff's non-compliance with the CTCA.

4            Plaintiffs' failure to present their claims is likely moot as a result of the Court's

5    finding above that Plaintiffs' false imprisonment and arrest claims against Defendants

6    Fladager, Harris, and Ferreira are untimely.  However, to the extent those claims are

7    not untimely, based on the allegations in the SAC Plaintiffs have also failed to comply

8    with the CTCA.  *See* Cal. Gov't Code § 911.2.  Accordingly, Defendants' motion to

9    dismiss Plaintiffs' false imprisonment and arrest claims against Defendants Fladager,

10   Harris, and Ferreira on these grounds is also granted.

11           **D.  Prosecutorial Immunity under Cal. Gov't Code § 821.6**

12           Defendants ask that the Court dismiss Plaintiffs' claims for violation of California

13   Civil Code section 52.1[6] on the basis of Defendants' alleged prosecutorial immunity

14   under California Government Code section 821.6.  This provision provides immunity

15   to liability for public employees where the injury was "caused by his instituting or

16   prosecuting any judicial or administrative proceeding within the scope of his

17   employment, even if he acts maliciously and without probable cause."  Cal. Gov't

18   Code § 821.6.  This immunity does not extend to "liability for false arrest or false

19   imprisonment" as such confinement is unlawful or without process.  *Bolbol v. City of

20   Daly City*, 754 F. Supp. 2d 1095, 1118 (N.D. Cal. 2010).  This exception to section

21   821.6 applies to other claims that are based on a false arrest or imprisonment.

22   ────────────────

23   [5] It appears unlikely that Plaintiffs would be able to satisfy the third factor even if it were properly
addressed in any of their pleadings.  In the opposition, Plaintiffs appear to suggest that Defendants

24   were aware of all the facts as "Carson alleged false arrest and imprisonment because he asserted the
same during in the preliminary hearing and trial." (Pls.' Opp'n at 12.)  However, this shows that Carson

25   was not ignorant of the true facts, as required by the third factor.  Carson would naturally be aware of
whether the charges against him were accurate as well as whether he had asserted that he was falsely
arrested during preliminary proceedings.  The affidavit supporting his arrest was already public and the

26   accrual of this claim had similarly already occurred at this point.  It is not readily apparent that facts
Carson would not have known that would cause him to act in reliance on Defendants' conduct.

27   [6] Unlike the other related cases with pending motions to dismiss, Plaintiffs did not bring a claim for
intentional infliction of emotional distress in the SAC.  Accordingly, the arguments in this section differ

28   slightly from the related orders as it addresses only the Bane Act claims.

*Cousins v. Lockyer*, 568 F.3d 1063, 1071 (concluding section 821.6 was inapplicable not only to a false imprisonment claim but also to "related state causes of action"); *see also Bolbol*, 754 F. Supp. 2d at 1119 (applying this rule to a Bane Act claim); *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1250 (N.D. Cal. 2015) (denying section 821.6 immunity for intentional infliction of emotional distress claims based on a wrongful detention). Defendants argue that Plaintiffs' claims are not solely predicated on false arrest and imprisonment so this exception to section 821.6 immunity should not apply.  Plaintiffs argue that doing so at this stage would be premature as the Court has not yet found that there was probable cause to justify the arrest.

Plaintiffs' claims are closely related and intertwined with Carson's alleged false arrest and false imprisonment.  Defendants may be correct that this is not the sole basis for Plaintiffs' Bane Act claims.  However, as alleged, Plaintiffs' claims all stem from Carson's eventual alleged false arrest and imprisonment.  Moreover, the sixth cause of action for a violation of the Bane Act expressly mentions Plaintiffs' arrest. (SAC ¶ 113.)  At this stage of the proceedings, attempting to extricate the portions of those claims that do not involve Plaintiffs' false arrest – if there are any – would require detailed factual determinations that are not appropriate and cannot be made at this stage.  Though the Court may still determine that Defendants are entitled to section 821.6 immunity at a later stage of these proceedings, based on the allegations present in the SAC, the Court does not find that Defendants Fladager, Harris, and Ferreira are entitled to section 821.6 immunity as to Plaintiffs' claims for violation of California Civil Code section 52.1 at this stage of these proceedings.

### E.  Plaintiffs' Fourteenth Amendment Claims

The fourth cause of action in Plaintiffs' SAC is brought under section 1983 for violation of Plaintiffs' Fourteenth Amendment rights.  (SAC at ¶ 98–105.)  Plaintiffs claim that Defendants Bunch, Jacobson, Evers, and Brown violated Plaintiffs' due process rights by "[failing] to disclose highly exculpatory evidence to prosecutors", resulting in Plaintiffs being arrested and held in jail.  (*Id.* at ¶ 101–02.)  Defendants

1    move to dismiss these claims on the grounds that Plaintiffs have failed to state

2    cognizable Fourteenth Amendment claims.[7]

3         In their opposition Plaintiffs also argue that Defendants should be held liable

4    under the Fourteenth Amendment for deliberate fabrication of evidence.  (Pls' Opp'n

5    at 16–17.)  However, these are not the claims raised in the fourth cause of action in

6    Plaintiffs' SAC.  (*See* SAC at ¶ 98–105.)  This cause of action in the SAC makes no

7    mention of fabricated evidence and appears specific to the withholding of exculpatory

8    evidence.  As such, parties' arguments about the fabrication of evidence as it relates

9    to this claim are not relevant.

10        Instead, the Plaintiffs' Fourteenth Amendment claim as actually stated in the

11   SAC specifically alleges that Defendants Bunch, Jacobson, Evers, and Brown "failed to

12   disclose highly exculpatory evidence to *prosecutors* even though they knew or should

13   have known or acted with reckless disregard for the fact that withholding such

14   evidence would result in constitutional deprivations of the Plaintiff" and that

15   Defendants Fladager, Harris, and Ferreira were purportedly liable as supervisors and

16   investigators.  (SAC at ¶ 101 (emphasis added).)  However, there are no factual

17   allegations within the SAC that appear to support the contention that these

18   Defendants withheld evidence from prosecutors and it would appear contrary to other

19   claims in the complaint about the involvement and knowledge of prosecutors in this

20   case.  As such, Plaintiffs have failed to state a Fourteenth Amendment claim as the

21   SAC does not contain any factual support for this claim.

22        Plaintiffs do allege facts elsewhere in the SAC that these Defendants fabricated

23   evidence (*See e.g.,* SAC at ¶¶ 60, 61, 62) and failed to disclose exculpatory

24   information to the *judge* who issued the arrest warrant for Carson.  (*See e.g.*, SAC at

25

26   [7] Unlike the motions to dismiss brought in the two related cases, Defendants' motion in this case is not
     limited to only the prosecutor Defendants.  Additionally, Plaintiffs' allegations in this action are specific
     to the withholding of exculpatory evidence compared to the more diverse Fourteenth Amendment
27   claims brought in the related cases.  As such, the analysis in this order as to Defendants Fladager,
     Harris, and Ferreira differs from the other actions.  The analysis as to Defendants Bunch, Jacobson,
28   Evers, and Brown is also unique to this order. Conley v. Gibson, 355 U.S. 41, 47

18

¶¶ 54, 62, 63).  As currently pled, however, this specific cause of action does not "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Given the fact that the complaints in related cases focus their Fourteenth Amendment claims on the fabrication of evidence, as Plaintiff's opposition also suggests they believe was intended in this case, it appears evident that Plaintiffs may still be able to bring a Fourteenth Amendment Claim and may wish to do so.[8]

Accordingly, Defendants' motion to dismiss the Fourteenth Amendment claim for failure to state a claim will be granted, with leave to amend.[9]

**F.  Plaintiffs' Malicious Prosecution Claims**

Plaintiffs' second cause of action is for malicious prosecution in violation of their Fourth Amendment rights.[10]  Defendants argue that these claims as to Defendants Fladager, Harris, and Ferreira should be dismissed as they are immune for actions that are part of their "prosecutorial activities" (Defs.' Reply at 6) and because Plaintiffs have failed to allege facts to support a malicious prosecution claim based on their involvement in the investigation as the allegations are conclusory and fail to show the involvement of  Defendants Fladager, Harris, and Ferreira (Defs.' Mot. at 5–6; Defs.' Reply at 6).

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right. Malicious prosecution actions are not limited to suits

---

[8] Though the Court need not reach this issue at this point in light of the failure to state a claim, it does bear noting that Defendants Fladager, Harris, and Ferreira appear entitled to prosecutorial immunity to those actions that are "intimately associated with the judicial phase of the criminal process."  *Broam v. Bogan*, 320 F.3d 1023, 1028–30 (9th Cir. 2003)

[9] Given that this is the only claim for which the Court has determined leave to amend would be appropriate, this case will proceed into the discovery phase despite leave to amend being granted as to this sole claim.

[10] Defendants in the related cases have not moved to dismiss similar claims in those cases.  As such, the analysis here is unique to this case.

1    against prosecutors but may be brought, as here, against other persons who have

2    wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d

3    1062, 1066 (9th Cir. 2004) (citations and internal quotation marks omitted).  Generally,

4    a claim of malicious prosecution is not cognizable under section 1983 if the state

5    judicial system has a process which provides a remedy.  *Usher v. City of Los Angeles*,

6    828 F.2d 556, 561–62 (9th Cir. 1987). "However, an exception exists to the general

7    rule when a malicious prosecution is conducted with the intent to deprive a person of

8    equal protection of the laws or is otherwise intended to subject a person to a denial of

9    constitutional rights." *Id.*

10          To the extent that Plaintiffs' allegations concern the actions of Defendants

11   Fladager, Harris, and Ferreira in preparing the arrest warrant application, during

12   preliminary hearings, and in the disclosure of discovery, Defendants are correct that

13   these actions are squarely within the protection of absolute prosecutorial immunity as

14   they are "intimately associated with the judicial phase of the criminal process." *Lacey*

15   *v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012); *see Burns*, 500 U.S. at 492

16   (holding that a prosecutor was granted absolute immunity for the presentation of

17   evidence in support of a search warrant at a probable cause hearing); *Kalina v.*

18   *Fletcher*, 522 U.S. 118, 129 (1997) (holding that a prosecutor's activities in preparing

19   and filing charging documents are protected by absolute immunity); *Broam*, 320 F.3d

20   at 1030.  However, Plaintiffs' allegations appear to extend prior to the beginning of

21   the judicial proceedings when the investigation was ongoing.  (*See* SAC at ¶ 79.)

22   Defendants argue that the allegations as to the investigatory phase are too conclusory

23   to state a claim.[11]  (Defs.' Reply at 6.)

24          For purposes of motion to dismiss, Plaintiffs have alleged sufficient facts to

25   proceed on the malicious prosecution claim.  Plaintiffs have alleged that Defendants

26   _____

27   [11] Defendants initially appeared to argue that Plaintiffs' claim failed as they had not alleged that
     Defendants Fladager, Harris, and Ferreira were "personally involved" in the deprivation of Plaintiffs'
     rights (Defs.' Mot. at 5–6) but in their reply appear to clarify that their argument is that Plaintiffs'

28   allegations are conclusory and lack sufficient factual allegations (Defs.' Mot. at 6).

1   Fladager, Harris, and Ferreira each "[s]upervised and knowingly condoned the

2   intimidation and coercion of witnesses in order to create false evidence against

3   Carson" during the investigation.  (SAC at ¶¶ 57–59.)  These allegations, made in

4   connection with lengthy supporting factual allegations about the events of the

5   investigation, are at least minimally sufficient to establish that Defendants Fladager,

6   Harris, and Ferreira sought to prosecute Carson with malice and without probable

7   cause.  *See Pontillo v. Stanislaus Cnty.*, 1:16-cv-01834-DAD-SKO, 2017 WL 6311663,

8   at *2 (E.D. Cal. Dec. 11, 2017) (citing *Yousefian v. City of Glendale*, 779 F.3d 1010,

9   1015 (9th Cir. 2015)).  As such, Plaintiffs have alleged sufficient facts to support a

10   malicious prosecution claim against Defendants Fladager, Harris, and Ferreira as to

11   their actions during the initial investigation.

12        Given the above, the Court grants Defendants' motion to dismiss as to Plaintiffs'

13   claims against Defendants Fladager, Harris, and Ferreira as to their actions during

14   judicial proceedings including the preparation of the arrest warrant motion, the

15   withholding of evidence during pretrial proceedings, and any actions they took as a

16   prosecutor in connection with preliminary proceedings.  The Court denies

17   Defendants' motion to dismiss these claims as they relate to the involvement of

18   Defendants Fladager, Harris, and Ferreira in the earlier three-year investigation.

19        **G.  Plaintiffs' Retaliatory Prosecution Claims**

20        Plaintiffs claim that Defendants prosecuted Carson in retaliation for

21   constitutionally protected activities in violation of First Amendment rights.[12]  Despite

22   Defendants' arguments to the contrary, Plaintiffs have alleged sufficient facts to state

23   such a claim.  To state a First Amendment retaliation claim, a plaintiff must allege "that

24   (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions

25   would chill a person of ordinary firmness from continuing to engage in the protected

26   activity and (3) the protected activity was a substantial or motivating factor in the

27   _____

28   [12] Similar claims have not been raised by the Plaintiffs in the related cases.  As such, the analysis here is unique to this case.

1   defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir.

2   2019) (citations and quotation marks omitted).  The third element, the causal

3   connection between a defendant's retaliatory animus and subsequent injury, can be

4   met by showing the absence of probable cause, supporting the assertion that

5   retaliation was the cause of the prosecution.  *See Hartman v. Moore*, 547 U.S. 250, 265

6   (2006).

7          Plaintiffs have alleged that Carson was engaged in constitutionally protected

8   activity in multiple forms.  Contrary to Defendants' assertions that Plaintiffs' allegations

9   are conclusory, the allegations regarding Carson's alleged constitutionally protected

10  action are detailed and numerous.  These actions include: open criticism of the SCDA

11  for overuse of wiretapping (SAC at ¶ 4), running a political campaign against

12  Defendant Fladager to become District Attorney (*id.*), publicly accusing Defendant

13  Fladager of abuse of power and misconduct (*id.*), writing a complaint to the California

14  State Bar alleging misconduct by Defendant Harris (*id.* at ¶ 29), filing declarations in

15  court "accusing Defendant Bunch of being unethical and a liar" (*id.*), filing a lawsuit

16  against Defendant Jacobson for assault (*id.*), participation in a jury tampering hearing

17  regarding Defendant Jacobson (*id.*), and the running of newspaper ads accusing

18  Defendant Jacobson of misconduct (*id.*).   Voicing criticism of an agency's conduct is

19  well settled as a constitutionally protected activity, thus satisfying the first requirement

20  for a retaliation claim.  *Capp*, 940 F.3d at 1054.

21         While Defendants are correct that the Court previously granted a motion to

22  dismiss in a separate case for similar claims, they are incorrect in suggesting that the

23  factual allegations between the complaint at issue there and the current operative

24  complaint in the present case are identical.  In this prior motion, the other court noted

25  that the complaint only included a few lines of factual allegations as to the nature of

26  the plaintiffs' protected speech.  *See DeFilippo v. Cnty. of Stanislaus*, No. 1:18-cv-

27  00496-TLN-BAM, 2022 WL 4237860, at *9 (E.D. Cal. Sept. 14, 2022).  This differs from

28  the present complaint where there are numerous allegations as to the protected

1    speech Carson was engaged in.  Further, the *DeFilippo* case presented standing

2    issues that are also not present here.  *Id.*

3           Turning to the second requirement, the Court notes that a First Amendment

4    claim does not require that Plaintiffs' speech was actually chilled by Defendants'

5    action, as Defendants seem to suggest by noting Carson was still able to sue

6    Defendant Jacobson and run for District attorney.  (Defs.' Reply at 7.)  Instead, the

7    question is "whether the alleged retaliation would chill a person of ordinary firmness

8    from continuing to engage in the protected activity."  *Capp*, 940 F.3d at 1054

9    (citations, quotation marks, and emphasis removed).  The alleged retaliation that

10   Carson suffered would certainly chill the speech of a person of ordinary firmness.

11   Under the facts alleged, Carson was subject to arrest, charged with murder, and held

12   in jail for months in retaliation.  These circumstances are more than sufficient to chill

13   speech.  *See Lacey*, 693 F.3d at 917 (arrest in retaliation is sufficient to chill speech).

14          Finally, as to the causation element is sufficiently alleged to state a claim.

15   Plaintiffs claim that at the time the arrest warrant was created, Defendants were aware

16   that their primary witness had already recanted his testimony, denying any

17   involvement and passing a polygraph to that effect.  (SAC at ¶ 50.)  Plaintiffs also claim

18   that Defendants intentionally made "significant material misstatements,

19   misrepresentations, lies, fabrications and blatant omissions of exculpatory

20   information" in the arrest warrant, which Plaintiffs detail at length in the SAC.  (*Id.* at

21   ¶ 54.)  While the Court cannot determine at this time whether there did not exist

22   probable cause for Carson's arrest as doing so would require the Court to make

23   factual findings that are inappropriate at the pleadings stage, it does find that Plaintiffs

24   have included sufficient factual allegations to support the claim that no probable

25   cause existed and that retaliation was the but-for cause of Carson's arrest and

26   prosecution.  *See Capp*, 940 F.3d at 1053; see also *Hartman*, 547 U.S. at 265.

27          Defendants' argument that the retaliation claims against Fladager, Harris, and

28   Ferreira are not cognizable because they are supervisors is unpersuasive.  While it is

1  true that these Defendants would not be liable simply due to their status as

2  supervisors, the SAC includes specific allegations about these individuals' personal

3  involvement in the alleged retaliatory acts.  (*See* SAC at ¶ 57–59.)  This is more than

4  sufficient to state a claim against these Defendants on motion to dismiss.  *Ashcroft v.*

5  *Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens

6  and section 1983 suits, a plaintiff must plead that each Government-official defendant,

7  through the official's own individual actions, has violated the Constitution.")

8          Given the above, Plaintiffs have alleged sufficient facts to state a First

9  Amendment retaliatory prosecution claim against Defendants. Defendant's Motion to

10  Dismiss will be denied as to Plaintiffs' First Amendment retaliation claims.

11          Plaintiffs also attempt to bring a retaliation claim under the Fourth Amendment

12  but as has been noted in related cases, no such cause of action seems to exist.

13  *DeFilippo*, 2022 WL 4237860, at *9.  In their opposition, Plaintiffs suggest that instead

14  this was intended to be a Fourth Amendment retaliatory *arrest* claim, arguing that an

15  arrest without probable cause would violate the Fourth Amendment.  However,

16  "retaliation" claims are specific to the First Amendment as retaliation is

17  unconstitutional when it chills protected activities, violating the First Amendment.

18  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986) ("Action designed to

19  retaliate against and chill political expression strikes at the heart of the First

20  Amendment."), *cert. denied,* 479 U.S. 1054  (1987).  The Fourth Amendment presents

21  no such grounds on which to claim protection from retaliation.  When Plaintiffs

22  suggest there must be a Fourth Amendment claim because "a retaliatory arrest

23  without probable cause would violate the Fourth Amendment protection against

24  unreasonable seizure" (Pls' Opp'n at 15), Plaintiffs appear to be effectively describing

25  a Fourth Amendment false arrest claim.  *See e.g.*, *Lee v. City of Los Angeles*, 250 F.3d

26  668, 685 (9th Cir. 2001).  However, the statements and allegations as to this third

27  cause of action in the SAC fail to establish this claim and, if they did, it would likely be

28  duplicative of Plaintiffs' second cause of action.  Thus, Defendants' motion to dismiss

1    Plaintiffs' First Amendment retaliation claims is denied and Defendants' motion to

2    dismiss Plaintiffs' Fourth Amendment retaliation claims is granted.

3        **H. Plaintiffs' *Monell* Claims**

4        Plaintiffs have alleged that the County of Stanislaus violated their constitutional

5    rights through the custom and/or policy, commonly known as a *Monell* claim.[13]  (SAC

6    at 51–52.)  In order to state a *Monell* claim, Plaintiffs must show that the municipality's

7    policy or custom caused the alleged constitutional injury.  *See Leatherman v. Tarrant*

8    *County Narc. Intel. and Coord. Unit*, 507 U.S. 163, 166 (1993); *Monell v. Dep't of*

9    *Social Servs.*, 436 U.S. 658, 694 (1978).  Defendants argue that the allegations in the

10   SAC are insufficient as Plaintiffs fail to establish the existence of a policy or custom that

11   resulted in the violation of Plaintiffs' rights.  (Defs.' Mot. at 11.)

12       In the SAC, Plaintiffs do not raise any allegations regarding specific customs or

13   policies of the County of Stanislaus.  (*See* SAC.)  Instead, Plaintiffs appear to rest their

14   *Monell* claim on allegations that Defendants Fladager and Harris were final

15   policymakers and thus "[the] malicious and retaliatory arrest and prosecution of

16   [Carson]" by Defendants Fladager and Harris amounts to the policy of the County of

17   Stanislaus.  (*Id.* at ¶ 108.)  These allegations are insufficient to successfully state a

18   *Monell* claim.

19       While district attorneys can act as local policymakers, they are not automatically

20   considered local policymakers by nature of their role.  The Ninth Circuit's decision in

21   *Goldstein*, upon which Plaintiffs mainly rely in opposing Defendants' motion,

22   determined that California district attorneys were acting as local policymakers when

23   they adopted policies related to the use of jailhouse informants.  *Goldstein v. City of*

24   *Long Beach*, 715 F.3d 750, 755 (9th Cir. 2013).  It did not find that district attorneys

25   were constantly acting as local policymakers in every action they made and relied in

26   part on an analysis of the important role of California district attorneys in creating the

27   _____

28   [13] Defendants in the related cases have not moved to dismiss similar claims in those cases.  As such, the analysis here is unique to this case.

1   policy for jailhouse informants.  *Id.* at 758–59.  By contrast, Plaintiffs here have only

2   provided the conclusory allegation that Defendants Fladager and Harris were "final

3   decisionmakers for the Stanislaus County District Attorney's Office and the County of

4   Stanislaus . . . ."  (SAC at ¶¶ 22, 108.)  In doing so, Plaintiffs essentially rely on the titles

5   of these Defendants to create *Monell* liability for their alleged actions.  These

6   allegations are insufficient.

7          Plaintiffs' broad allegations that Stanislaus should be held liable based on the

8   failure of Defendants Fladager and Harris "to provide adequate training and

9   supervision of Stanislaus County District Attorney attorneys and investigators, and

10  Sheriff's Department deputies with respect to the constitutional limits on search,

11  seizure, arrest, and detention" are similarly conclusory and insufficient.  (SAC at ¶ 20.)

12  *Monell* liability is "at its most tenuous" predicated on a theory of failure to train.

13  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Plaintiffs' conclusory allegations are

14  insufficient to support inferences that the County of Stanislaus' training policy amounts

15  to deliberate indifference to constitutional rights or that the constitutional injury would

16  not have resulted with proper training.  *Benavidez v. Cnty. of San Diego*, 993 F.3d

17  1134, 1153–54 (9th Cir. 2021).

18         Given the above, Plaintiffs have failed to allege sufficient facts in the SAC to

19  support a *Monell* claim against Stanislaus County.  As such, Defendants' motion to

20  dismiss will be granted as to this claim.

21         **I.  Plaintiffs' Bane Act Claims**

22         In Defendants' motion to dismiss, Defendants argue that Plaintiffs have failed to

23  state a cognizable Bane Act claim under California Civil Code section 52.1 against all

24  Defendants as Plaintiffs have not alleged that any defendant acted with specific intent

25  to violate Plaintiffs' constitutional rights.  (Defs.' Mot. at 12–13.)  Plaintiffs contend that

26  they have satisfied the specific intent element through allegations of threats,

27  intimidation, and coercion by each Defendant and the claim that the Defendants were

28  involved in a conspiracy to deny Plaintiffs' rights.  (Pls.' Opp'n at 20–21.)

1    Taking the allegations in the SAC as true, the Court finds Plaintiffs have alleged

2    sufficient facts to support that Defendants acted with specific intent to violate Plaintiffs'

3    constitutional rights.  The Bane Act provides a private cause of action against anyone

4    who "interferes by threats, intimidation, or coercion, or attempts to interfere by

5    threats, intimidation, or coercion, with the exercise or enjoyment by an individual or

6    individuals of rights secured by the Constitution or laws of the United States, or laws

7    and rights secured by the Constitution or laws of California."  Cal. Civil Code § 52.1(a).

8    Plaintiffs are correct that "a reckless disregard for a person's constitutional rights is

9    evidence of a specific intent to deprive that person of those rights." *Reese v. Cnty. of*

10   *Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (internal citations and quotations

11   omitted).  The complaint, as currently formulated, clearly asserts facts to support the

12   claim that Defendants acted with reckless disregard to Plaintiffs' constitutional rights.

13   Specifically, Plaintiffs allege that Defendants prepared and requested arrest warrants

14   for Plaintiffs despite knowing the evidence to support such an arrest was insufficient.

15   Plaintiffs further allege that Defendants did this in order to retaliate against Carson.  At

16   this stage of these proceedings, these allegations are sufficient to show that

17   Defendants acted with reckless disregard to Plaintiffs' right to be free from

18   unreasonable seizure.  *Reese*, 888 F.3d at 1043.  Accordingly, Defendants' motion to

19   dismiss these claims is denied.

20                                      **CONCLUSION**

21           This is an unusual case.  The Court is cognizant of the fact that a Superior Court

22   Judge dismissed the underlying criminal charges as to the Plaintiffs in this action,

23   which necessarily lends support to the allegations in the Complaint, making them

24   more "plausible on their face" than they might have otherwise been. *Cf. Iqbal*, 556

25   U.S. at 678.  Whether Plaintiffs will be able to produce sufficient evidence to support

26   those allegations in order to survive summary judgment or prevail at trial is of course a

27   question to be left for another day.

28   ////

In accordance with the above and good cause appearing, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 71) is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' Motion to Dismiss claims against Fladager, Harris, Ferreira, Bunch, Jacobson, and Brown in their official capacity is GRANTED;

2. Defendants' Motion to Dismiss the *Monell* claims against Fladager and Harris is GRANTED;

3. Defendants' Motion to Dismiss Plaintiffs' Judicial Deception, False Imprisonment, and False Arrest Claims against Defendants Fladager, Harris, and Ferreira as untimely is GRANTED;

4. Defendants' Motion to Dismiss Plaintiffs' False Imprisonment and False Arrest Claims against Defendants Fladager, Harris, and Ferreira for failure to comply with the California Tort Claims Act is GRANTED;

5. Defendants' Motion to Dismiss claims against Defendants Fladager, Harris, and Ferreira for intentional infliction of emotional distress and violation of California Civil Code § 52.1 on the basis of immunity under Cal. Gov't Code § 821.6 is DENIED;

6. Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment claims against Defendants Fladager, Harris, Ferreira, Bunch, Jacobson, Evers, and Brown for failure to state a claim is GRANTED.  This claim is dismissed with leave to amend.  Within thirty (30) days of this order, Plaintiffs may file an amended complaint seeking to state a Fourteenth Amendment claim;

7. Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment Malicious Prosecution claims against Defendants Fladager, Harris, Ferreira, and Bunch is GRANTED on grounds of prosecutorial immunity, but is DENIED where the claims as they relate to the involvement of Defendants in the earlier investigation; and

8. Defendants' Motion to Dismiss Plaintiffs' retaliatory prosecution claim is

DENIED as to Plaintiffs' First Amendment claim but GRANTED as to Plaintiffs' Fourth Amendment claim; and

9. Defendants' Motion to Dismiss Plaintiffs' *Monell* claim for failure to state a claim is GRANTED; and

10. Defendants' Motion to Dismiss Plaintiffs' claims under California Civil Code section 52.1 against Defendants Fladager, Harris, and Ferreira is DENIED.

To the extent the Court has dismissed claims in the Second Amended Complaint, with the exception of Plaintiffs' Fourteenth Amendment claim, these claims are dismissed without leave to amend.  Plaintiffs have had several opportunities to cure the defects identified above, and the Court finds that any further amendments would be futile. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

IT IS SO ORDERED.

Dated:   **September 8, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – carson20cv00747.mtd

29